ADELBERT MOSHER v. MARY A. KITTLE.

*Married woman—Contract of employment—Sole property.*

A married woman, after receiving from her husband a deed of
his farm, subject to a mortgage of $2,000, mortgaged the farm
for $1,000, and expended $700 of · the money in building a
house on the farm.   About two months after receiving the
deed, she informed a farm laborer, who had been for several
years employed by her husband on the farm, that she had a
deed of the place, and desired him to continue to work as
formerly, and that she would pay him.   He made no reply,
but continued to work on the farm for four years and five
months.   Nothing was said between him and the husband as
to the termination of the original employment.   The income
of the farm was used in supporting the family, in paying
interest upon the mortgages, the farm expenses, and certain
indebtedness of the husband, who was aged and infirm, and
did but little active work.   The wife at times gave directions
regarding the farm work, and it was understood in the family
that she owned the farm.   The income passed mainly through
the hands of her son, who lived in the family, and assumed
a good deal of the control and management of the farm.   The
wife at one time instructed this son to market a load of
wheat, and pay the laborer some money out of the proceeds.
·  She also stated to the neighbors that she considered him in
her own personal employment, and was liable to him for his
·  wages; and he also considered himself in her employment.
Upon these facts the trial court, in a suit brought against the
wife by the assignee of the laborer to recover for the labor
performed by him after she received the deed of the farm,
found that a contract existed between the wife and the laborer
relating to her own estate, and upon which she was in law
liable; which view is concurred in by the Court.[1]

Error to Ingham.    (Person, J.)    Argued June 20 and
21, 1894.    Decided June 26, 1894.

---

[1] For cases bearing upon the question of the liability of married
women upon general contracts, see note at the end of the opinion
herein; upon promissory notes, see *O'Donnell v. Bray*, 99 Mich.
534, and note.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Smith, Lee & Day,* for appellant.

*Jason E. Nichols,* for plaintiff.

GRANT, J. · This case was tried before the court without a jury, and comes before us on exceptions to the findings.

The husband of the defendant was a farmer possessed of a farm of 160 acres. Alfred Mosher, the assignor of plaintiff, had been for many years in Mr. Kittle's employment as a farm laborer. January 19, 1885, Mr. Kittle conveyed the farm by warranty deed to his wife. It was subject to a mortgage of $2,000. She subsequently executed another mortgage for $1,000, $700 of which she expended in building a house. The first of April, 1885, defendant informed Alfred that she had a deed of the place, and that she wanted him to keep right on as he had done, and that she would pay him. To this Alfred made no reply, but continued to work till September 2, 1889. There was no talk between Alfred and Mr. Kittle as to the termination of his employment for Mr. Kittle. The income from the farm was used in supporting the family, in paying interest upon the mortgages, the farm expenses, and certain indebtedness of Mr. Kittle, who was aged and infirm, and did but little active work. Mrs. Kittle at times gave directions regarding farm work, and it was understood in the family that she owned the farm. The income passed mainly through the hands of their son, who lived in the family, and assumed a good deal of the control and management of the farm. At one time, Alfred wishing some money, Mrs. Kittle instructed her son to draw a load of wheat to market and pay him out of the proceeds. She made statements to the neighbors that she

considered Alfred in her own personal employment, and was liable to him for his wages. Alfred also considered himself in her employment. Upon these facts the court found that a contract existed between Alfred and defendant relating to her own estate, and upon which she was in law liable.

It is argued, on behalf of defendant, that there was no contract in regard to her sole property; that she was not in fact carrying on the business of farming, but that the business continued in the same manner after the deed as before. We cannot concur in this view. We think the conclusion reached by the court below correct. The farm was hers. She made a payment to Alfred. She was benefited by his labor. She to some extent directed the management. Her husband had but little to do with it. It is evident that both understood that Alfred's employment for her husband had ceased, and that he was thereafter in her employ. The husband had no interest in the farm any further than his support and the payment of his debts were concerned. But no agreement for either of these upon her part is shown. No formal termination of the contract of hire between Alfred and her husband was necessary. The burden of proof was, of course, upon plaintiff to show a contract with her, and in regard to her sole property. He satisfied these requirements by proof of a promise to employ and pay, acted upon by Alfred, and that the work was performed upon her own property and for her benefit.

The judgment is affirmed.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.

CONTRACTS OF MARRIED WOMEN.

For cases bearing upon the question of the liability of married women on their contracts generally, see:

*General Rules Applicable to the Subject.*

1. *DeVries v. Conklin*, 22 Mich. 255, stating that the statute removing the disability of married women to contract in relation to property owned by them at the time of their marriage, or thereafter acquired, has been liberally construed, with a view to effectuate its general purpose; that a married woman's contracts for the purchase of property on credit have been sustained (*Tillman v. Shackleton*, 15 Mich. 447); that it has been held that husband and wife may make conveyances of land directly to each other (*Burdeno v. Amperse*, 14 Mich. 97); that a married woman may mortgage her lands for the debt of her husband has also been held (*Watson v. Thurber*, 11 Mich. 457), as a conveyance by mortgage comes clearly within the power given her by the statute, and she must judge for herself whether it is for her interest to give it or not; but holding that the statute neither in terms authorizes her to make herself personally liable for the debt of another, nor, where no consideration moves to her, can it be presumptively for her benefit to do so.

2. *West v. Laraway*, 28 Mich. 464, holding that, under our present system, whatever contracts a married woman may lawfully make may be made "with the like effect as if she were unmarried," but that she can only make such contracts as relate to her own property; that she may purchase property, and bind herself for the purchase money, but that she cannot enter into an undertaking jointly with her husband merely as his surety, and she can never be held without affirmative proof that the contract is her own and within her powers.

3. *Johnson v. Sutherland*, 39 Mich. 579, holding that a married woman's promise to pay must be based on a consideration in the shape of property; that she has no power to make contracts except concerning her separate estate, which must be either by making agreements concerning property already possessed, and referring to it, or else concerning property acquired by the contract or in consideration of it.

4. *Insurance Co. v. McClellan*, 43 Mich. 564, holding that there is never any presumption of the validity of an executory promise of a married woman, whether negotiable or not; that proof must always be given of such a consideration as will bind her, whether value received is expressed or not.

5. *Edwards v. McEnhill*, 51 Mich. 160, 166, holding that the statute removes the common-law disabilities only partially, and it therefore becomes necessary, when a contract by a married woman

is counted on or relied upon, to show the facts, that it may be seen that they were such as would enable her to make it.

6. *Insurance Co. v. Bank*, 68 Mich. 116, holding that, in order to bind a married woman, the contract must be one on behalf of her sole property, and it should appear to have been made with that intent, as well as upon a consideration that would sustain it for that purpose; the burden of proof being upon the plaintiff to show for what purpose she contracted, and to prove it clearly.

### *When Estopped from Raising the Question of Invalidity.*

*Evans v. Calman*, 92 Mich. 427, holding that where, after personal service of summons, a married woman allows a judgment to be taken against her *ex parte* upon a note signed by herself and husband, she cannot, in a suit in equity brought by her to set aside a levy made upon her land under an execution issued on the judgment, attack the judgment as invalid as to her because the consideration of the note was not for her individual benefit or for the benefit of her estate, it being her duty to have made the defense in the original suit.

### *Appointment of Agent.*

1. *Rankin v. West*, 25 Mich. 195, 200, holding that, as held in *Tillman v. Shackleton*, 15 Mich. 447, a married woman may carry on business in her own name, and for that purpose make herself liable for a purchase of property on credit; and, if she may do this, there is no reason in law why her husband may not be her agent for this purpose.

2. *Insurance Co. v. McClellan*, 43 Mich. 564, holding that a married woman cannot give to an agent any power which she does not possess herself, and cannot therefore appoint any agents that could bind her except concerning her property; and persons dealing with such agents must inquire into their powers.

3. *Fechheimer v. Peirce*, 70 Mich. 440, holding that there can be no presumption of a husband's authority to act for his wife, and a person seeking to hold her for acts done by another must show affirmatively full authority to bind her.

### *Rights of Bona fide Holder.*

1. *Johnson v. Sutherland*, 39 Mich. 579, holding that, inasmuch as a married woman cannot contract generally, her contracts, whether negotiable or non-negotiable in form, can never be any better in the hands of a *bona fide* holder than in those of the first holder.

2. *Waterbury v. Andrews*, 67 Mich. 281, holding that a note given by a married woman to secure her husband's debt is void as soon as made, and will not be protected in the hands of a *bona fide* holder, whether negotiable or not.

## Contract of Suretyship.

1. *Russel v. Bank*, 39 Mich. 671, 673, holding that a mere contract of suretyship is within neither the letter nor the spirit of the statute.

2. *Howe v. North*, 69 Mich. 272, 285, where a married woman contracted for the board of her husband, son, and herself, with the understanding that she was making a personal contract which would be binding upon her and her estate. And it was held that she simply became responsible for the debt and default of another, and occupied the position of surety for her husband, and such a contract she had not the power to make.

## Contract of Partnership.

1. *Bassett v. Shepardson,* 52 Mich. 3, holding that partnership relations between a man and a woman are dissolved by their marriage; and the man's continued possession of property owned by the woman, but used by the firm, is by virtue of a license, merely, which would cease at her death.

2. *Artman v. Ferguson,* 73 Mich. 146, holding that a husband and wife cannot enter into a contract of partnership between themselves, and thus render themselves jointly liable for the contracts of the firm thus (sought to be) established.

3. *Vail v. Winterstein,* 94 Mich. 230, holding that a married woman may enter into partnership relations with others than her husband, and thus make her separate estate liable for the debts of the firm.

## Mortgage of Land to Secure Husband's Debt.

1. *Watson v. Thurber*, 11 Mich. 457, 469 (approved in *DeVries v. Conklin*, 22 Mich. 255, 259), holding that a wife may mortgage her lands to secure her husband's debts.

2. *Frickee v. Donner*, 35 Mich. 151, holding that the connection of a husband with a mortgage given by his wife upon her land, which was occupied as a homestead, to secure his debt, arising from his joining with her in the mortgage, is of no consequence, she being able to mortgage the property as though she were sole, and any irregularities or defects in the execution or acknowledgment of the mortgage on his part will not impair the security.

## Liability on Joint Covenant in Deed or Mortgage of Husband's Land.

1. *Kitchell v. Mudgett*, 37 Mich. 81, 84, holding that a married woman who joins with her husband in a mortgage of his land is not personally liable on their covenant to pay the mortgage debt; and *Carley v. Fox*, 38 Mich. 387, holding that a wife who joins with her husband in a warranty deed of his land is not liable on their covenants of warranty.

2. *Gantz v. Toles*, 40 Mich. 725, 728, holding that a married

woman cannot become the debtor of a mortgagee by joining with her husband in a mortgage of his land to release her dower, or by the invalid act of joining in the bond given with the mortgage.

3. *Arthur v. Caverly*, 98 Mich. 82, holding that a wife who joins with her husband in a warranty deed of his land, the sole consideration for which is the conveyance to her of other land, is jointly liable with him for a breach of the covenants in said deed.

### Effect of Joining with Husband in a Mortgage of His Lands, on Which She Holds a Prior Mortgage.

*Kitchell v. Mudgett*, 37 Mich. 81, where a married woman, who held a duly-recorded mortgage upon land owned by her husband, and which they occupied as a homestead, united with him in a second mortgage of the land in the manner prescribed by the statute for the release of dower and homestead rights. The second mortgagee brought suit to foreclose his mortgage, and claimed that, by uniting in the mortgage, the wife transferred her own mortgage interest, and subjected it to the lien of the mortgage she signed, and in support of his claim cited *Niles v. Ransford*, 1 Mich. 338, and *Thayer v. McGee*, 20 Id. 195, where it was held that a quitclaim deed will pass a mortgage interest. And it was held that the cases are very different; that the quitclaim deed, as the name of the instrument imports, is intended as a transfer of any interest the grantor or releasor may have in the lands, whatever its nature, but the execution by the wife of the husband's deed of any sort implies no such intent; that it implies, on the other hand, that she executes it for the purposes for which the statute makes her joining with him important to the giving of full effect to his deed, namely, the releasing of her contingent right of dower, and the consenting to the deed when it affects the homestead; and, if the intent is to affect any independent interest of her own, it is reasonable to expect some special provision in the instrument showing specifically in what manner and how far her separate interests are intended to be affected.

### Liability on Covenants in Lease from Husband.

*Jenne v. Marble*, 37 Mich. 319, where the plaintiff, as assignee, sued the defendant upon her personal covenants contained in a lease from her husband to her, and for the value of certain farm live stock claimed to have been sold to her by him. And it was held:

*a*—That the agreement was one intended to be enforced by an ordinary action at common law, and not in equity.

*b*—That it was executory entirely on the part of the wife, involving no present transfer or charge of her property, or any of it.

*c*—That it required her to pay rent, incapable of being apportioned, upon the farm on which the family at the time resided,

and which included a legal homestead, over which her husband or his creditors could under no circumstances exercise dominion which would interfere with her right of possession, and it conferred a right of eviction for any default in the payment of rent.

d—That it either contemplated a separation, which no court of law would enforce, or else it compelled defendant to pay rent for property jointly occupied with her husband as a home, in which he was legally bound to maintain her.

e—That, as regarded the personal property, it consisted of animals used on the homestead, most of which were exempt from execution and incapable of being disposed of by the husband without defendant's consent, and liable, if so interfered with, to be replevied by her, and none of which had been so distinguished as to take them out of the exemption.

And it was further held that, if the contract was to be sustained, it must be upon the ground that husbands and wives can contract with each other just as freely as strangers can, and may sue each other just as freely at law or in equity; that the statutes have not gone far enough to allow this, and that, so far as husbands and wives are concerned, they cannot contract with each other in any larger sense than they could formerly in equity, except that their contracts, when valid, may be enforced at law when legal in form.

### Contract for Improvements on Land Held by Husband and Wife Jointly.

1. *Speier v. Opfer*, 73 Mich. 35, holding that a married woman cannot be held liable upon a joint contract with her husband for the erection of a building upon land held by them jointly by entireties.

2. *Curtis v. Crowe*, 74 Mich. 99, holding that a wife cannot make a valid contract for the erection of a building upon land owned by herself and husband jointly.

### Bond of Husband and Wife Given for Loan Used in Erecting Building on Her Land.

*Wilson v. Wilson Estate*, 80 Mich. 472, holding that a married woman is liable upon a joint and several bond, signed by herself and her husband, given as security for money borrowed by her, and used in building a house upon her land.

### Contracts for Family Necessaries.

1. *Campbell v. White*, 22 Mich. 178, 185, where one of the questions presented was whether a married woman residing with her husband, and owning separate estate, could be held liable for merchandise purchased by herself on her individual credit and

sole agreement to pay for it, in case the items belonged to the class of family necessaries, and were actually used by the husband's family and in his household. And it was held:

a—That the question must be answered in the affirmative, and upon the grounds stated by Mr. Justice COOLEY in *Tillman v. Shackleton*, 15 Mich. 447.

b—That in the present case, as in that, the liability of the wife was consequent upon her obtainment of the goods on her sole credit and individual promise to pay for them, and was therefore contemporaneous with such obtainment, and not conditional upon the kind of use to which the goods should be subsequently put.

c—That her right to acquire upon her own credit was complete when the articles were obtained, and her liability to the vendor was not contingent upon her ownership of other separate estate, or on the character of the goods bought, or the nature of their immediate or ulterior disposition, but it existed, if at all, when the property was obtained on her exclusive credit and individual agreement; that her promise to pay for the articles was an undertaking to pay for her separate property, and one she was competent to make.

2. *Powers v. Russell*, 26 Mich. 179, holding, in a suit by a merchant against a married woman for the price of goods sold to her, that if the plaintiff knew that the defendant was a married woman, living with her husband, and the goods were not of a character to indicate that they were bought for other than family use in her husband's family, and she did not claim affirmatively to be purchasing them on her individual account, the natural inference would be that she was purchasing them on her husband's account, and for the use of his family, and she could not be made individually liable without an express agreement to become so, or that the goods should be charged or the credit given to herself.

3. *Howe v. North*, 69 Mich. 272, 284, holding that, under the statute, a married woman residing with her husband is liable for merchandise purchased by herself upon her individual credit and sole agreement to pay for the same, even when the merchandise so purchased belongs to the class of family necessaries, and are actually used by the husband's family, and in his house.

4. *Fafeyta v. McGoldrick*, 79 Mich. 360, holding that a married woman is liable for the price of a suit of clothes for a minor son, of which she is the sole purchaser, and to whom alone credit is given, upon her agreement to pay for the same.

5. *Hirshfield v. Waldron*, 83 Mich. 116, holding that a married woman is liable for the price of clothing purchased by her for a minor son, and charged to her by her direction, she agreeing to pay for the same.

### Contract for Professional Services.

1. *Carstens v. Hanselman*, 61 Mich. 426, holding that a contract between a married woman, whose husband has deserted her, and a physician, for professional services, is binding upon her.

2. *Buck v. Haynes Estate*, 75 Mich. 397, holding that the promise of a married woman to pay for medical services rendered to her husband is not binding, it not being a contract relating to or benefiting her separate estate.

3. *Wolcott v. Patterson*, 100 Mich. 227, holding that a married woman may make herself chargeable with the value of services rendered by an attorney upon her employment to secure a divorce from her husband.

### Miscellaneous Cases.

1. *Damon v. Deeves*, 57 Mich. 247, holding that a married woman is as much at liberty as a spinster to create express liens on her property for any lawful purpose, and can mortgage it to secure another person's debt, even if her note therefor be not binding.

2. *Heinmiller v. Hatheway*, 60 Mich. 391, holding that, where a wife joins with her husband in a deed of the fee of land of which she is in whole or in part the sole owner, she conveys all of her interest therein, but she can only be held liable on her covenants in such deed to the extent of her interest in the land conveyed.

3. *Jordan v. Westerman*, 62 Mich. 170, holding that a contract between a wife and her solicitors, made in advance of a decree for divorce and allowance of alimony, giving the solicitors one-half of such alimony, is void as against public policy.

4. *Post v. Shafer*, 63 Mich. 85, 89, where judgment was rendered against a husband and wife upon their joint promissory note, and they appealed jointly to the circuit court, and executed a joint bond on such appeal. And it was held that the rendition of judgment against the wife made her appeal necessary; that the appeal-bond was one that she could execute, and that she was bound thereby to the same extent as the surety, and judgment could not be properly rendered on the bond against one more than the other.

5. *Wineman v. Phillips*, 93 Mich. 223, holding that a married woman can secure the payment of the unpaid purchase price of property, the title to which vested in herself and husband jointly, by a mortgage upon her real estate.

6. *Gillespie v. Beecher*, 94 Mich. 374, where a husband and wife sued their landlord, who had put them into joint possession of a house and premises which they were using as a dwelling and an hotel and boarding-house under a lease executed to and by them jointly, for his unlawful entry into the leased premises, and their

eviction therefrom. The circuit judge directed a verdict for the defendant, on the ground that the wife was not a proper party to the lease, and could not join with her husband in bringing the suit. And, in reversing the judgment entered on the verdict, it was held that the married woman's act was passed for the protection of married women, and its purpose was to enlarge their rights, not to contract them; and that it was not meant to deprive them of the right, either acting alone or jointly with others, of protecting their interests in property, either real or personal.

7. *LeMay v. Wickert*, 98 Mich. 628, holding that a deed executed by a married woman in payment of her husband's debt is valid.