REELMAN *v.* GROSFEND.

1. HUSBAND AND WIFE — PURCHASE OF GOODS — AGENCY — QUESTIONS FOR JURY.

Where, in assumpsit against husband and wife for lumber sold, plaintiff claimed that, though the lumber was originally sold to the husband, after the first car load was shipped, and when plaintiff was in a condition to recover it back, a new arrangement was made, which authorized him to extend the credit to both husband and wife, and that he in fact did so, and such new arrangement was denied by defendants, whether both agreed to be liable, or whether the husband acted as agent for the wife, was a question for the jury.

2. STATUTE OF FRAUDS — HUSBAND AND WIFE — PROMISE TO PAY HUSBAND'S DEBT.

An oral agreement by a married woman that if plaintiff would leave building material purchased by her husband, and would ship the balance ordered, she would see that it was paid for, was in effect a statement that, if her husband would not pay

for the material, she would, and was void both under the statute of frauds and as the act of a woman sought to be made liable for her husband's debt.

3. SAME—APPEAL—RECORD.

In an action of assumpsit against a husband and.wife, to recover the value of certain lumber originally sold to the husband and used to build a house on the wife's land, plaintiff claimed that after a portion of the lumber had been shipped, and while he was entitled to recover it back, he made a new agreement with the wife, by which he was entitled to furnish it on the credit of both, and that the wife's statement that, if her husband did not pay, she would, was only a part of the agreement. The record on error, instead of setting out the evidence, merely recited that plaintiff introduced evidence to support his claim. *Held*, that a judgment in his favor would not be reversed on the ground that the wife's agreement was void under the statute of frauds or as an agreement to pay her husband's debt.

4. HUSBAND AND WIFE—AGENCY—INSTRUCTIONS.

Where, in assumpsit against husband and wife for the price of certain building materials, it appeared that plaintiff first extended credit to the husband, and it was claimed by plaintiff, and denied by defendant, that afterwards a new arrangement was made, by which credit was extended to both, it was error for the court to charge that if the wife was the owner of the property on which the materials were to be used, and the husband owned no real estate, except a lot of small value, and he conducted the business in relation to his wife's property with her knowledge and consent, and she and her husband planned to erect a building on her property, and he, with her approval, contracted for the material, she would be liable therefor, regardless of the fact that the bill was charged, and the correspondence in relation thereto was directed, to him.

Error to Barry; Smith, J. Submitted February 14, 1905. (Docket No. 202.) Decided July 21, 1905.

Assumpsit by Jacob Reelman against Evander S. Grosfend and Lucretia M. Grosfend for goods sold and delivered. There was judgment for plaintiff, and defendants bring error. Reversed.

*Milton F. Jordan* and *Colgrove & Potter*, for appellants.

*Thomas Sullivan* and *Hartley E. Hendrick*, for appellee.

MOORE, C. J.   Plaintiff recovered a judgment of $171.78 for the value of lumber and material which entered into the construction of a dwelling house erected upon village lots, the record title of which is in Lucretia M. Grosfend, the wife of Evander S. Grosfend.   The case is brought here by writ of error.

The record does not give the testimony in extenso.   It states that after impaneling a jury the plaintiff introduced evidence to support his claim, and it then sets out particularly some of the evidence.   It is then stated defendants then introduced evidence to controvert the claim of the plaintiff, and to support the claim made by the defendants in their plea and notice.   It then mentions particularly some of the defenses to which the testimony was directed. Not a single witness is named, nor is the substance of his testimony set out.   This being the situation, it is somewhat difficult to discuss intelligently the 39 assignments of error which are presented.

Mr. Grosfend visited the plaintiff, whose place of business is at Grand Rapids, and, as the result of a talk between them, a paper was drawn and signed, reading:

"GRAND RAPIDS, MICH., June 16, 1897.

"Mr. S. GROSFEND bought of J. Reelman, wholesale and retail dealer in hard and soft lumber, flooring, ceiling, siding, etc., job work done to order.   Citizens' phone 1125. Rear 135 Grandville avenue.   Dimension shingles a specialty."

Here follows a long list of articles to be furnished, and then:

"The amount of this bill is $447.98.   This bill of goods to be delivered f. o. b. at Middleville for above amount. The above sum to be placed in the State Bank at Middleville, subject to the invoice of unloading.   If found satis-

factory the money to be sent to Mr. Reelman. Will deliver on or before June 26.

"J. REELMAN.
"E. S. GROSFEND."

It is the claim of the plaintiff that after he shipped the first car load of lumber he drew upon the defendant Evander S. Grosfend, through the Middleville Bank, for the value of the car load of lumber; that the draft was returned to him unpaid; that in the meantime he learned Mr. Grosfend did not own the lots upon which the building was intended to be erected, and was financially irresponsible; that he then went to Middleville with the intention of recovering back the lumber shipped, and went to the farm to see Mr. Grosfend, and there met Mrs. Grosfend and told her the situation, and that he could not let the lumber go under those circumstances; that she then said to him "that if he would leave the building material there, and would ship the balance, that she would see that it was paid for;" that in pursuance of such promise upon her part he allowed the car load already shipped to remain, and proceeded to ship the balance, and also furnished extras; that the defendants completed the dwelling, the plaintiff changing the heading on his books of account so that where it formerly read, "Evander S. Grosfend," it afterwards read, "Mrs. and Mr. Evander S. Grosfend." The plaintiff further testified that, had it not been for the express promise of Mrs. Grosfend to see that this lumber was paid for, he would have taken away the lumber shipped, and would have refused to ship any more; that Mr. Grosfend afterwards carried on the correspondence in reference to the building material; that he wrote Mr. Grosfend from time to time, and sent the bills to him; that, when the finishing material was shipped, Mr. Grosfend wrote plaintiff, expressing himself as satisfied, and asking him to come to Middleville and settle; that he came to Middleville in pursuance of the letter sent him, when Mr. Grosfend found some fault with part of the materials, and asked that plaintiff make a reduction in his

bill. This the plaintiff refused to do, but said to Mr. Grosfend that any material he had that was not up to grade he might ship back, and plaintiff would credit the amount returned; that this was done by Mr. Grosfend; and that he was given credit for the amount returned.

It is claimed that it was admitted on cross-examination by Mrs. Grosfend that she and her husband talked over and planned the building of this dwelling house together, on the lots owned by her in the village of Middleville; that she wanted and intended persons doing work on the building, and Mr. Reelman, who furnished the material, should have their pay for the same; that the dwelling house into which this material was put was erected for the mutual benefit of herself and husband, on land owned by her; that they were now occupying it.

It was the contention of the plaintiff that if Mr. and Mrs. Grosfend planned the building of this house together for their joint occupancy and mutual benefit, and Mr. Grosfend, in pursuance of that, ordered the lumber and incurred this indebtedness for their joint benefit, with the knowledge and consent of Mrs. Grosfend, then they were jointly liable.

Upon the part of the defendants it was claimed there was but one contract, and it was made with the defendant E. S. Grosfend upon his own responsibility, and without his acting in any way as the agent of Mrs. Grosfend; that the building material was not in accordance with the terms and conditions of the contract, and that, at the time the plaintiff shipped the second car of material to Mr. Grosfend and it arrived at Middleville, the defendant E. S. Grosfend, together with the carpenter, Mr. Cook, went to the city of Grand Rapids and called upon Mr. Reelman, who agreed to come to the village of Middleville, and that he did come within a day or two, and that at that time the parties talked over the question of the lumber not being in accordance with the terms and conditions of the contract; the defendant E. S. Grosfend then threatening to send it back; and that it was agreed between the par-

ties that the defendant E. S. Grosfend should go on and use the material, and employ such extra help as was necessary to use the same, and that he would be compensated therefor, and that such material as it was absolutely impossible to use he should send back to the plaintiff. It was also the claim of the defendants that the shingles were not in accordance with the contract; that he employed such extra help in pursuance of his agreement with the plaintiff, and that certain material that was covered by the contract was not furnished by the plaintiff under its terms; and that the defendant, by reason thereof, was compelled to purchase material elsewhere to supply the place of material which the plaintiff refused to furnish under his contract.

On the part of the defendants it is insisted:

*First.* That the testimony does not show Mr. Grosfend was acting for his wife.

*Second.* If Mr. Grosfend was in fact the agent of his wife, that, if plaintiff was dealing with him as the known agent, then Mr. Grosfend would not be liable; that, if the plaintiff was dealing with him as the agent of an undisclosed principal, when he learned who the principal was he must elect either to hold the agent, or else to hold the principal, but could not hold both.

*Third.* They contend that the promise of Mrs. Grosfend, if made, was a collateral promise, not in writing, and within the statute of frauds.

As to the first and second of these claims, they might be well taken if all that occurred was what occurred at Grand Rapids at the time the order was given; but it is the claim of the plaintiff that after the first car load of lumber was shipped, and when he was in a condition to recover it back, a new arrangement was made, which authorized him to extend the credit to both of defendants, and that he in fact so extended it. This is denied by defendants, and presented a question of fact for the jury, under proper instructions from the judge.

As to the third contention, if all that was said by Mrs. Grosfend to the plaintiff was "that if he would leave the

building material there, and would ship the balance, that she would see that it was paid for," the point would be well taken.   At that time the credit had been extended to the husband, and the language quoted was in effect a statement that, if her husband did not pay for the lumber and material, she would.   Such a promise would be void unless in writing.   It is also probable it would be void as the act of a married woman who is sought to be made liable for the debt of her husband.   See *Emory* v. *Lord*, 26 Mich. 431.

The case, however, does not rest there.   We have already stated the claims of the respective parties.   It has already appeared the testimony is not returned.   The record states that plaintiff introduced evidence to support his claim.   If, after the first load of lumber was shipped, and while it was in the power of the plaintiff to secure its return, he in fact made an agreement by which the material which was to go into a building to be erected upon land owned by Mrs. Grosfend (the building to be occupied by both defendants) was left at Middleville, and the balance of the material was shipped, the two defendants agreeing to pay for the same, and the credit was then and there and from that time extended to both of them, we think such an agreement could be enforced.   By making such agreement, property was acquired for the purpose of having it attached to the real estate of the wife.   As to the husband, there is nothing in the way of his making such an agreement.   As to the wife, it was an agreement which resulted in acquiring property which was to be attached to her real estate, and the moment it became so attached it became hers.   See *Johnson* v. *Sutherland,* 39 Mich. 579; *Post* v. *Shafer,* 63 Mich. 85; *Wilson* v. *Wilson's Estate,* 80 Mich. 472; *Gillespie* v. *Beecher,* 94 Mich. 374; *Arthur* v. *Caverly,* 98 Mich. 82; *Mosher* v. *Kittle,* 101 Mich. 345.

The judge charged the jury:

" If you find from the evidence in the case that Mrs.

Grosfend was the owner of the lots in Middleville on which the building was to be built, and the farm on which they lived; that Mr. Grosfend was the owner of no real estate, except one lot of small value, and that he conducted the business in relation to all the property owned by Mrs. Grosfend, selling the produce, conducting the business of collecting, handling, and controlling the money thereof, with her knowledge and consent, and that she and her husband planned to put a building on these lots; and that Mr. Grosfend went to Grand Rapids and contracted for this building material with her knowledge and consent and approval, and in consonance with such planning to build such house—she would be liable for whatever amount you find from the evidence is still due and unpaid for such lumber, and in such case it would be immaterial if the bill was charged to Mr. Grosfend, and that the correspondence connected therewith was directed to him."

Plaintiff's counsel say this charge was justified by *First Commercial Bank of Pontiac* v. *Newton*, 117 Mich. 433, and other cases cited in the brief. We think, however, a reference to the cases will show they are easily distinguishable from the case at bar. According to the testimony of the plaintiff, the credit in the first instance was extended to Mr. Grosfend. Afterwards a new arrangement was made, by which it was extended to both defendants. All the facts stated in that portion of the charge quoted might exist, and the credit still be extended to Mr. Grosfend. If it was extended to him, he alone would be liable unless a new arrangement was made.

The other assignments of error—especially those relating to the conduct of some of the jurors—it is unnecessary to discuss, as a like situation will not occur again.

Judgment is reversed, and new trial ordered.

CARPENTER, McALVAY, GRANT, and BLAIR, JJ., concurred.