FOX v. SCHUMANN.

1. HUSBAND AND WIFE—CONTRACTS—QUESTION OF FACT.

In an action by a minor against husband and wife for damages for failure to permit plaintiff to attend school when in session, properly provided with books and other necessaries, and for the reasonable value of her services during the time contracted, where the evidence showed that the wife, with whom the arrangement was claimed to have been made, had charge of their household matters, and participated in the management of the business, the property and bank account being in her name, the question whether the claimed contract was made directly with the wife, in the absence of her husband, for herself and upon her own responsibility, was properly submitted to the jury.

2. PARENT AND CHILD—MINORS—EMANCIPATION.

While presumptively the earnings and services of a minor belong to the parent, the latter may relinquish this right or emancipate the child by an express agreement, or some formal act, and emancipation may also arise by implication from facts and circumstances.

3. SAME.

Where plaintiff's evidence as to her emancipation by her mother was practically undisputed, and ample, if believed by the jury, *held*, sufficient to sustain a verdict for plaintiff.

4. TRIAL—CREDIBILITY OF WITNESS.

Where the truth of the claimed contract turned chiefly upon the credibility of plaintiff and defendant wife, the issue was within the province of the jury.

5. DAMAGES—EXCESSIVE VERDICT—BREACH OF CONTRACT—EVIDENCE.

Where, in an action for the breach of a contract to permit plaintiff to attend school and properly equip her with books, clothing, etc., in return for her services, the evidence showed that plaintiff had worked for defendant for three years and seven months, but had been kept out of school so much by defendant that it would cost plaintiff about $200 in actual expenses, aside from lost time, in making up her studies, a verdict for $225 cannot be said to be excessive or against the weight of the evidence.

Error to Bay; Collins, J. Submitted January 7, 1916. (Docket No. 69.) Decided June 1, 1916.

Assumpsit by Florence Fox, a minor, by next friend, in justice's court against Augusta Schumann and Christopher Schumann for breach of contract. From a judgment for plaintiff defendants appealed to the circuit court. Judgment for plaintiff against defendant Augusta Schumann, who brings error. Affirmed.

*W. A. Collins*, for appellant.

*James Donnelly*. for appellee.

STEERE, J. This case was commenced in a justice's court of Bay county, where judgment was rendered in plaintiff's favor against both defendants. They appealed to the circuit court of said county, where, upon retrial by jury, a judgment of no cause of action was rendered in favor of defendant Christopher Schumann, and plaintiff recovered a verdict and judgment

for $225 against defendant Augusta Schumann, who
brings the case to this court for review upon a writ
or error.

Defendants are husband and wife, and at the time
this action arose lived together as such in Bangor
township, Bay county, Mich., where he ran a saloon,
with the license in his name, but which he testified be-
longed to both of them. She owned the place upon
which the saloon was located and they resided. The
place consisted of about 35 acres. They did not engage
in general farming but kept a horse, cow, chickens,
etc., and worked a garden of about half an acre. The
wife, Augusta, appears to have been dominant in their
business affairs. She not only owned the place, but
the bank account was in her name, and she assisted in
managing and running the saloon, furnishing lunches,
and waiting on customers. She was a sister of plain-
tiff's mother, whose husband died early in 1910 leav-
ing her with several children and in limited circum-
stances. In February, 1910, shortly after her father's
death, plaintiff, then about 13 years of age, went to
live and work in the Schumann home, where she re-
mained until September, 1913. She claims to have
been there under an agreement between herself and
Mrs. Schumann by which the latter promised to board,
properly clothe, and send her to school in return for
her domestic services until she should finish the eighth
grade, which she could have done at the end of the
third year had she been allowed to attend regularly;
but that she was kept from school by her aunt much
of the time, meagerly clothed, and otherwise not well
or kindly treated, as a result of which her time was
devoted to drudgery, and she was deprived of the edu-
cational opportunities promised for her services. She
brought this action to recover damages for failure to
permit her to attend school when in session, properly
provided with books and other necessaries, and for the

reasonable value of her services during that time. On her part Mrs. Schumann denies that she ever made any agreement with or in relation to plaintiff, but claims that the child was simply brought to defendants' home by her mother and allowed to live with them, assisting as she could in the housework; that while there she was well cared for, clothed, and sent to school when in session, and she was well enough to attend, until she left of her own choice at the expiration of about three years. The testimony upon these conflicting claims is irreconcilable. Reversal is urged upon the following grounds: The contract, if there was one, would not bind a married woman; there is no proof of emancipation of the plaintiff. And under the motion for a new trial: The verdict of the jury is against the weight of evidence; and the amount of the verdict is excessive. The trial court instructed the jury that a verdict could not be rendered against both defendants, but might be rendered against either one of them, leaving it for the jury to determine whether, if any agreement was entered into and violated, Mrs. Schumann, with whom alone plaintiff claimed the arrangement was made, acted with authority as agent for her husband (in which case he would be liable), or whether she contracted in her own behalf independent of her husband; that the evidence showed Mrs. Schumann owned the property where they lived and did business, held the bank account in her name, had charge of their household matters, and participated in the management of the business and could, if she wanted to, hire plaintiff to work for her under a legal contract for her services, and, even though a married woman living with her husband, "if she made the contract with plaintiff to do this work, she is bound by it." The record fails to disclose evidence of any business transactions conducted by any one in connection with the home, property, or business of the Schumanns except

by Mrs. Schumann herself, and the husband testified that he knew nothing about any agreement between his wife and plaintiff, saying:

"I had nothing to do with them whatever.  *  *  *  I don't know anything about who bought her clothing. I don't even buy my own clothes."

The power of a married woman to bind her separate estate has been too often reviewed to call for discussion here.  There was clearly sufficient testimony upon which to base a verdict that the contract claimed was made directly with the wife in the absence of her husband, for herself and upon her own responsibility. The question was properly submitted to the jury under the general rule applied and discussed in *Howe* v. *North,* 69 Mich. 272 (37 N. W. 213) ; *Hirshfield* v. *Waldron,* 83 Mich. 116 (47 N. W. 239) ; *Meads* v. *Martin,* 84 Mich. 306 (47 N. W. 583) ; *Mosher* v. *Kittle,* 101 Mich. 345 (59 N. W. 497) ; *Goodman* v. *Shipley,* 105 Mich. 439 (63 N. W. 412) ; *Lempke* v. *Felcher,* 115 Mich. 37 (73 N. W. 17) ; *Bolthouse* v. *De Spelder,* 181 Mich. 153 (147 N. W. 589).  In the last-cited case it was held that a married woman, living with her husband in a home belonging to him, was not disabled from entering into a contract for domestic services for the family in their home, which would be binding upon her estate after her death, although she owned no separate property at the time she made the contract.

While presumptively the earnings and services of a minor belong to the parent until majority is reached, the parent may, at any time, relinquish this right to, or emancipate, the child.  This may be done by an express agreement, or some formal act, and it may also arise by implication from proven facts and circumstances.  This court has said:

"The fact of emancipation may take place suddenly and by express arrangement, or it may occur grad-

ually and by conduct implying that the parent and child have mutually assented to the child's release from parental authority. And in either case the change may be wrought in a short time." *Schoenberg* v. *Voigt,* 36 Mich. 310.

Plaintiff testified that prior to her going to work for defendant her mother had given her to understand that she would have to take care of herself, told her she had to make her own living, and released her; that she has supported herself ever since, making her own bargain for services and collecting her earnings, to which her mother never made claim; that in the presence of her mother at the Schumann home she made her own bargain with Mrs. Schumann to stay with and work for her in order to get an education, as the latter promised in return for her services to support and put her "through the eighth grade," after which she could go to a business college and then secure a position. The trial court correctly instructed the jury upon the question of emancipation, and submitted it to them as an issue of fact. Her testimony upon this subject was practically undisputed and ample, if believed by the jury, to sustain the verdict upon that issue.

It is further urged that the verdict was against the weight of evidence, and excessive because the alleged contract is only supported by the testimony of plaintiff, which is squarely denied by that of Mrs. Schumann, and the evidence, as a whole, is destitute of definite data, or items of damage, adequate to furnish any legal basis for the amount of verdict rendered.

It is true that whether any agreement was made and, if so, what it was, turns chiefly upon the comparative credibility of plaintiff and defendant; but that issue is clearly a matter within the province of the jury. The compared testimony of the two witnesses, weighed in the light of undisputed circumstances and supporting or opposing testimony of other witnesses,

gives fair opportunity for the jury to find that such a contract was made and violated by the appealing defendant, without shocking the conscience of the court, and we see no occasion for the court to invade that field of inquiry.

It is shown there was a good school near the Schumann home where plaintiff could have finished the eighth grade in the three years if allowed to attend regularly and given reasonable time to pursue her studies. The teacher of the school, who appears to have taken an interest in plaintiff, testified that she was "apt, and very industrious and obedient," but was kept from school for months, attended irregularly, and often came late, giving as an excuse that she was kept at work; that she was poorly clad, and frequently her clothing was so shabby that she was ridiculed by the other children; that witness in passing the Schumann house mornings and evenings had seen her cleaning up the saloon, out of doors in her bare feet caring for the stock, chopping wood, etc.; and Mrs. Schumann gave as an excuse for plaintiff's absence from school that she had to work and did not have clothing. When interviewed upon the subject by the truant officer of Bay county, defendant told him that if he wanted plaintiff in school he would have to see that she was properly clothed and supplied with books. She also testified that the school officers were after her for not sending plaintiff to school, but asserted that she was only kept out when she, or defendant, was sick, and for two weeks at one time, after she came home crying because "the kids all laughed at her." Others residing near by give support to plaintiff's testimony that she worked faithfully for defendant, both as a domestic in the household and at outside labor of a kind not usually performed by a female servant, feeding and caring for stock, cleaning stables, hoeing and weeding in the gar-

den, chopping and gathering fuel, etc., "working right along all the time," as one witness expressed it. While defendant denies that plaintiff was required to do outdoor work or scrub out the saloon, as claimed, we do not discover that she anywhere denies that she was industrious and her service faithful.

Of her damages and the circumstances of her leaving, plaintiff testified that while with defendant she at times earned money working for wages in a beanery and canning factory near by and at picking berries in season, because defendant who took her earnings told her if she wanted clothes she would have to work out and get them; that finally, at a time when her mother was taken sick and sent for her, she went to visit and care for her while sick, remaining five weeks, and then defendant, who had consented to her going, sent word that she could not return, refusing later to let her have her personal effects which she had not taken when she temporarily left, and which were as listed in her bill of particulars. Under her evidence, the truth of which was for the jury, she was not in default for not returning, and defendant violated her agreement in various ways. Defendant testified, on the other hand, that plaintiff remained away of her own accord, and denied taking any of her earnings, which she stated amounted to only about $16 and was spent by plaintiff herself.

Of plaintiff's direct financial loss in being deprived of promised schooling her teacher testified, from her own experience as a student and observations as a teacher, that, aside from lost time, the actual expenses in making up her studies would be about $200, saying:

"If she made up the school year she lost in 1 year, it would cost her for living expenses, books and clothing about $200, with a great deal of extra help from the teacher and time spent outside the regular school hours. * * * I told her that if she worked hard and could be there every day she would finish the

eighth, and I also told her the second year I had been there that if she attended every day and worked hard I would get her through the eighth grade at the end of 3 years—that is, the last year I was there—but on account of conditions, and her not attending, it was impossible. * * * She would have finished the eighth grade at the end of the third year if she would have been there, with my extra time and work outside of school hours."

Aside from the legal questions before discussed, this case is essentially one of disputed facts, and its merits run with the credibility of witnesses, which was for the jury to decide. There is evidential support for the verdict rendered, which we are not prepared to find was excessive or against the weight of evidence, nor are we of the opinion that it affirmatively appears any error complained of has resulted in a miscarriage of justice.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.