MARY E. DEVANEY v. MARGARET KOYNE.

*Burden of proof—Bill to obtain benefit of deed.*

A bill filed by a daughter against her mother to obtain the benefit of a deed from the latter was dismissed, and on appeal the dismissal was affirmed, but without costs of the Supreme Court against either party, where, though the proofs were strong, they did not sufficiently preponderate for complainant to show that the mother's deed to the daughter had ever been fully delivered so as to place the property beyond the mother's control.

Appeal from Saginaw.  (Gage, J.)  June 3.—June 11.

BILL to compel delivery of deed.  Complainant appeals.
Affirmed.

*F. L. Eaton* and *Albert Trask* for complainant.

*D. P. Foote* for defendant.

CAMPBELL, J.  This is one of those family disputes which
arise from doing business without the precautions usual among
ordinary parties.  Complainant filed her bill to get the benefit
of a deed from her mother, the defendant, to herself, which
she claims to have been delivered and afterwards surrepti-
tiously taken back and destroyed.  The defense is that the
deed was never delivered or intended to be delivered during
defendant's life, but she had it prepared with the design of
having it become operative on her death.  The testimony is
directly in conflict on the most important facts, and the ques-
tion resolves itself into the inquiry whether the complainant's
case is so clearly established as to authorize us to confirm it
in spite of this conflict.

We have not much doubt that the original arrangements
out of which the transaction finally grew were designed to
secure the property to complainant in some way, but how is
certainly left somewhat in doubt.  Complainant married
against her father's wishes, but with her mother's approval,
and was for a time excluded from her father's house.  Her
father was, nevertheless, attached to her, and finally put her
and her husband into possession of the 80 acres in question,
with the expressed purpose that it should be held for her
benefit.  But it is quite probable that the father meant to
exercise some discretion as to how and when it should be put
into a shape to secure her rights.  Subsequently the father
and mother quarreled, and the latter began divorce proceed-
ings.  These were compromised by an arrangement whereby
the wife was to be secured $2000.  She also insisted on hav-
ing the title to this 80 acres, and it was conveyed to her.
But while no written trust was created and no conditions

imposed, there is no serious doubt that she received it on an understanding that she should hold it for Mary's benefit, and that it was more a matter of female pride than anything else which led to her wishing the gift to come from her, in form, than from her husband. As already said, no conditions were attached to the conveyance to the wife from the husband, but there was, we think, such an understanding. The fact, however, that the matter was left in this condition is pretty strong evidence that there was no agreement that the land was to be at once conveyed out and out to Mary. The husband of Mary was evidently a cause of more or less family difficulty with her relatives, and we do not think that the intentions for her benefit were entirely put in form, even verbally.

There was no deed drawn to Mary at the time the mortgage and conveyance were made to defendant by her husband. But when defendant, according to her own testimony, took her own papers from the office of Mr. Hanchett, her counsel, who had drawn them, and with whom she had left them, she got him to draw a deed to Mary, which is the one in dispute. His testimony is clear that he advised her not to deliver it, but to keep it in her own hands, so as only to become operative at her death. She swears that this intention continued, and that she never delivered it. Mary swears as positively that she did deliver it, but gave her some caution about letting Mary's husband have access to it, and that finding it afterwards in a trunk of defendant's, to which defendant had sent her on an errand, she supposed her mother had put it there to keep it from Devaney. Subsequently defendant, who seems to be a woman of quick temper and some willfulness, took offense at Devaney and destroyed the deed. Defendant admits she showed it to Mary, but claims it was not delivered, and that she told Mary she meant to keep control of it. Subsequently she conveyed the least valuable 40 acres to Mary. There is some dispute as to how far this transaction was understood. There is testimony which seems credible, that defendant frequently spoke of having conveyed to Mary; but it is quite possible that in doing so she merely

referred to the execution of this deed, which was no secret, and did not mean to do any more.

In such a conflict, where, upon the central fact, there is room for misapprehension, we do not feel justified in reversing the decree. The complainant has the burden of proof, and we are not satisfied it preponderates for her. While there is strong testimony in her behalf, there is also very strong testimony that defendant, at any rate, never supposed she had put the property beyond her control. And there is a good deal to indicate that complainant's husband was the cause of the hesitation to put the land where he could get a husband's influence in managing it. Upon the whole case, we do not feel justified in reversing the decree of dismissal.

Complainant seems to have been a dutiful daughter, and it may be fairly expected that her mother will in due time perform what may not be her legal duty, but what, nevertheless, seems to have been contemplated and left to be carried out by the confidence of the parties. Defendant will no doubt respect her own maternal obligations.

The controversy is one which has not been begun or continued without probable cause, and while we leave the decree below to stand affirmed, we are not disposed to give costs in this Court against either party. Both will bear their own costs.

The other Justices concurred.