# JUNE TERM, 1908.

### DRAPER *v.* BROWN.

1. EVIDENCE — ADMISSIONS — LETTERS — COMPETENCY — RECOLLECTION OF WITNESS.

    Where a letter previously written by a witness is offered in evidence as containing a statement by defendant upon which complainant relies as an admission, its competency depends primarily upon the ability of the writer to guarantee that it accurately represents his knowledge and recollection at the time; and where the writer has no independent recollection of the matter, and the letter does not aid or refresh his recollection, it is not competent.

2. SAME—EFFECT.

    A letter written by an agent to his principal, regarding a loan applied for by defendant, wherein it is stated "He [defendant] offers his wife's mortgage on the house and lot he occupies," is not admissible as an admission by defendant that the title to the property was in his wife, the issue being whether a deed, admitted to have been executed in her favor, was ever delivered.

3. DEEDS—DELIVERY—EVIDENCE—ACTS OF GRANTOR—EFFECT.

    On a bill to re-establish a deed, admitted to have been executed by defendant to his wife, since deceased, as grantee, but claimed to have never been delivered, the fact that defendant, after her death, obtained from complainant, her sole heir and legatee, a quitclaim deed "for the purpose of perfecting the title" on account of the "unrecorded" deed, is not conclusive of the fact of delivery of the original deed, but is, at most, a circumstance to be considered in determining whether there was a delivery.

4. WITNESSES—COMPETENCY—TRANSACTIONS WITH PERSONS SINCE DECEASED.

    On a bill by the sole heir and legatee of a testatrix against her surviving husband to restore a deed, admitted by him to have

(120)

been executed in her favor, but never delivered, he is not prohibited by the statute from testifying that after executing the deed he kept it in his safe at his place of business, and that his wife never saw it unless at the time of its destruction, although she was told by him that the deed was in existence and where to find it.

5. DEEDS—DELIVERY—EVIDENCE—SUFFICIENCY.

On a bill by the sole heir and legatee of a testatrix against her surviving husband to restore a deed, admitted by him to have been executed in her favor, but never delivered, evidence examined, and *held*, that complainant has not, by a preponderance of the evidence, aided by the presumptions the court is bound to indulge, established the fact that testatrix died seised of the property in question.

6. EXECUTORS AND ADMINISTRATORS — CLAIMS — ALLOWANCE — COURTS—EQUITY—JURISDICTION.

It is not the province of a court of equity to allow or disallow claims against the estates of deceased persons, or to administer estates; especially after the subject has been entered upon in the probate court.

7. WILLS — CONSTRUCTION — BILL TO OBTAIN — JURISDICTION — CHANCERY COURT.

The superior court of Grand Rapids, in chancery, has jurisdiction to determine the ownership of a homestead, the issue being whether an unrecorded deed to decedent from her husband was ever delivered, to construe her will, and to instruct and direct the trustee thereunder with respect to the trust estate.

8. EXECUTORS AND ADMINISTRATORS—MANAGEMENT OF ESTATE— MORTGAGES—PAYMENT—DUTY OF EXECUTOR.

A will by which testator devised certain mortgaged land to her executor in trust, income payable to her daughter for life, remainder to certain other persons, and the residue of her estate to her executor in trust, income payable to her daughter for life, remainder to persons other than the remaindermen in the preceding paragraph, considered, together with the surrounding circumstances, among them being the fact that the estate, aside from the mortgaged property, was insufficient to pay the mortgages, and *held*, that testatrix did not, by a general direction to pay her debts, direct her executor to pay the mortgages, and that no duty devolved upon him so to do.

9. SAME.

Where a will does not devolve upon the executor the duty of

paying mortgages upon real estate, but shows a contrary intention, and the mortgage debts are not provable, or not proved, against the estate, the executor cannot pay them.

10. ESTOPPEL—EQUITABLE ESTOPPEL—CESTUI QUE TRUST.
Where an executor and trustee under a will had no right to use the income from one trust fund to preserve another, but the beneficiary for life of both funds knew of his doing so and made no objection, she is estopped to thereafter complain of his action in so doing.

11. TRUSTS—MANAGEMENT BY TRUSTEE—SEPARATE FUNDS—USE OF ONE FOR BENEFIT OF OTHER.
Where an executor and trustee under a will without right used the principal of one trust fund to preserve real estate constituting another trust fund, by paying the interest on mortgages thereon, he will, for the purpose of an accounting, be charged with such principal; but he will have a lien upon the other fund for reimbursement out of any surplus which may remain after payment of the mortgages thereon.

12. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—LIMITATIONS—PAYMENT BY EXECUTOR—EFFECT.
The policy of our law, as declared in the statutes (sections 9375, 9380, 3 Comp. Laws) and by the court, is to commit allowance of claims against estates to a commission, to refuse allowance of demands barred by the statutes, and to confine the administrator to the payment of claims duly allowed; whence payments by an executor of interest upon mortgages upon real estate belonging to his testatrix, whatever effect they may have to preserve the lien of the mortgages, do not operate to suspend limitations as to the mortgage debt, and the executor or administrator may not by such payments either revive a demand barred by the statute at the decease of the debtor, or admit the liability of the estate upon one otherwise barred.

13. COSTS—ON APPEAL—MODIFICATION.
The modification of a decree on appeal being substantial, the appellant was awarded costs of the appeal.

Appeal from the superior court of Grand Rapids; Stuart, J. Submitted November 22, 1907. (Docket No. 32.) Decided June 27, 1908.

Bill by Mabel B. Draper against Henry D. Brown, individually, and as executor of the last will and testament

of Cordelia Brown, deceased, Mary Brown, the People's
Savings Bank, and others, to re-establish a deed, to set
aside a deed obtained by fraud, to set aside a mortgage,
to construe a will and compel the execution of the trusts
created thereby, and for an accounting. From a decree
dismissing the bill, complainant appeals. Modified.

*Crane & Norris* (*William Aldrich Tateum*, of coun-
sel), for complainant.

*Wesley W. Hyde* and *Howard A. Thornton*, for de-
fendant Henry D. Brown.

*Gleason & Lee*, for defendant Mary Brown.

*John Carveth* (*Butterfield & Keeney*, of counsel),
for defendant People's Savings Bank.

OSTRANDER, J. The complainant, who was born Octo-
ber 31, 1870, is the only child of Henry D. and Cordelia
Brown, nee Rogers, who were married June 20, 1854, and
who lived and cohabited together as husband and wife
until the death of Cordelia, September 7, 1891. Com-
plainant in October, 1892, married Morris B. Draper, and
of the four children born to them, three, Helen Louise,
Jerome Chester, and Morris B., who are made defendants
and who appear by their guardian ad litem, are living.
Henry D. Brown, who is now upwards of 79 years of age,
was again married January 24, 1893, to Mary E. Combs,
with whom he is still living. Cordelia (Rogers) Brown
died testate. Her will was executed August 6, 1891. It
was admitted to probate October 19, 1891. Henry D.
Brown, who was named therein as sole executor, qualified
as such November 7, 1891, and has since, with an excep-
tion to be noted, had the care and management of the
estate. By the terms of the will, the executor is directed
to pay all lawful debts existing against the testatrix at the
time of her death and the expenses of settling the estate.
After giving to her husband and daughter all silverware,
household goods, wares, fixtures and furniture, and all

pictures and paintings, and to her daughter all her personal wardrobe, wearing apparel and jewelry, to her physician all notes she held against him and the sum of $200 in money, which provisions are found in the first four paragraphs of the will, the fifth and sixth clauses read as follows:

"*Fifth.* The real estate I own, situate in the city of Grand Rapids, Michigan, at the northeast corner of Fountain and Bostwick streets, in said city, and particularly described in my deed thereof from Charlotte Pressburg and husband, dated April 30, 1885, and recorded in the register's office of Kent county, Michigan, November 25, 1885, in liber 170 of deeds, at page 170, I give, devise and bequeath to my said husband, Henry D. Brown, in trust nevertheless to and for the following purposes: To keep the same rented and from the income thereof keep the buildings thereon at all times properly insured, to pay all necessary taxes and repairs, and any other expenses that may be incurred in the care and management of the said property, and then to pay what then remains of such income to my said daughter, Mabel H. Brown, for and during the period of her natural life, the said net income thereof to be so paid her annually, and upon her death I give, devise and bequeath the said real estate and property to the child or children of my said daughter, if any such child survive her, and if she die without child her surviving, then the said property shall pass to the children of my sister, Helena M. Post, of Rochester, N. Y., and to the children of my sister-in-law Sophia Bryant, of Olivet, Michigan, the same to be divided between the said children, share and share alike, and in case of the death of any such children, leaving him or her surviving lawful issue, then such issue shall take the share that the deceased parent if living would have taken. By the child or children of my said daughter, Mabel H. Brown, I mean the issue of her body, or any child she may lawfully adopt so as to become her heir. If at any time in the judgment of my said trustee it may be wise and for the best interests of my said daughter to sell said real estate and convert the same into interest-bearing securities, then I authorize such sale to be made, provided my said daughter thereto consent, and direct that the net avails of such property be then invested in interest-bearing securities, the net income thereof to be paid to my said daughter

during her life and then at her death what remains shall pass in the same manner and to the same persons who would have taken it had it remained real estate as provided hereinbefore in this clause of my will.

"*Sixth.* All the rest, residue and remainder of the estate I may own or in any way be entitled to at my decease, both personal and real, after satisfying the provisions of the foregoing clauses of this my will, I give, devise and bequeath to my said husband, Henry D. Brown, in trust, for the following purposes: I direct my said trustee to sell and convey the real estate at such time as in his judgment it may be wise and convert the same, together with the personal estate, from time to time, as he may be able, into interest-bearing securities, and to pay from the income thereof all taxes upon said trust estate and all expense incurred in the care and management thereof, and then pay the balance of said income each year to my said daughter, Mabel H. Brown, until the death of my said husband, should my said daughter survive him, and then upon the death of my said husband I give the entire of said trust estate then remaining to my said daughter, Mabel H. Brown, and her heirs forever, and in case my said husband shall survive my said daughter, then upon the death of my said daughter, what then remains of said trust estate shall pass to the legal heirs of my said daughter, except in case my said daughter shall have made a will which shall after her death be admitted to probate, in which she shall have devised or bequeathed the said trust estate, then in that case the said estate, on the death of my said daughter, shall pass to the legatees in her said will named in such manner as she shall have designated therein."

The time limited for the presentation of claims was June 11, 1892. One claim only was presented, the claimant being Clark H. Gleason, who drew the will. The amount of his claim was $15, and this was allowed. An order was duly entered closing the estate against claims. September 8, 1893, Henry D. Brown, as executor, filed his first account, and thereafter successive accounts were filed October 16, 1894; October 1, 1895; October 2, 1896; November 19, 1897; December 2, 1899; December 30, 1904. February 23, 1905, what is called a summarized executor's account was filed and a statement summarizing

receipts and disbursements as they appear by the annual reports with reference to the two trust funds created by the will. Upon none of these accounts was there any hearing. There was no publication of notice of hearing or proof of personal service of notice of hearing. None of them were settled and allowed. By a stipulation, it was agreed between complainant and Henry D. Brown that a hearing in open court be had upon all the reports on the 8th day of February, 1905, at 10 o'clock. Sometime in March, 1905, as the record is understood, Mary (Combs) Brown petitioned the probate court to revive the commission on claims and to allow further time for the examination and adjustment of claims, setting up that she was the owner of a valid claim amounting to $2,500, which she had not presented. In an amended petition, which was filed March 28, 1905, she sets out the basis of her claim with more formality. Her claim, known in the record as the Pressburg note and mortgage, was allowed by the probate judge, who acted as commissioner on claims, at the sum of $2,636.67, and a certain mortgage, known as the Lovett estate mortgage, amounting to $2,556.67, was allowed as a contingent claim against the estate. Complainant appealed from this order to the circuit court for the county of Kent, and her appeal was perfected and is pending.

June 6, 1905, complainant filed the bill in this cause. She asks that a quitclaim deed of the homestead, made by her to her father, be canceled; that a mortgage upon the homestead given to the People's Savings Bank by her father November 14, 1894, to secure payment of borrowed money, be canceled; that her father account for the annual value of the use and occupation of the homestead; that her father account for all funds which came into his hands as charged in the bill; that he account for household goods and chattels; that the will be construed; that defendant Mary Brown be decreed to deliver up the Pressburg note and mortgage and that it be discharged and canceled; that it be decreed that she has no claim against

the estate of Cordelia Brown; that Henry D. Brown be restrained from proceeding in an accounting in the probate court and from disposing of any of the estate, and the defendant Mary Brown be restrained from the prosecution of her claim until the further order of the court. The case was heard in open court. None of the answers challenge the jurisdiction of the court, but when the taking of testimony began it was objected on the part of defendants that the court had no jurisdiction in the matter of an accounting, and that the allowance of claims in probate court could not be reviewed by the superior court of Grand Rapids.

The questions involved in the appeal from a decree dismissing the bill of complaint are stated by counsel for complainant and appellant as follows:

"1. Whether or not Cordelia Brown died seised in fee simple of the Brown homestead under a conveyance of the same to her by Henry D. Brown. If this issue is found for the complainant, then,

"2. Whether or not the defendant, Henry D. Brown, obtained from Mabel B. Draper the quitclaim deed of the homestead of date September 6th, 1893, by fraud, and the deed should be set aside; and,

"3. Whether or not the People's Savings Bank is a mortgagee in good faith.

"4. Whether or not the bequest of the residuum by the 6th paragraph of Cordelia Brown's will created a separate and distinct trust fund, not liable to share in any losses of the other trust created by such will.

"5. Whether or not it was the duty of the executor under the law and the will to invest the residuum of the estate and pay the income thereof annually to the complainant, and if he failed in such duty to make good to the complainant the loss from his neglect.

"6. Whether or not the executor is liable to make good to the complainant the loss of the Bostwick street property by reason of gross neglect and bad faith in failing to sell such real estate and invest the proceeds as required by the 5th paragraph of the will.

"7. Whether or not Henry D. Brown as executor, by the purchase of the Pressburg mortgage in the name of Mary Brown and procuring in her name the allowance of

two claims thereon, both barred by the statute of limitations, did not attempt to defraud the complainant of her entire estate under her mother's will.

" 8. Whether or not the executor should be charged with $3,000, as one-half of the premium paid by Eliza Sprague to Henry D. Brown and Cordelia Brown for the purchase of the Sprague annuity, together with interest thereon.

"9. Whether or not the executor, because he kept no separate account of the trusts created by the will, nor any account of the money belonging to the estate, nor made any investment of the residuum, and received and used all the trust funds as his own money during his entire administration, is entitled to compensation and commissions.

"10. Whether or not the admission of the incompetent testimony of Brown, the surviving grantor and her agent managing her personal estate, eliminated from the case a consideration of the fact that the trial judge saw the witnesses, and,

"11. Whether or not the defendants by answering without any objection to the jurisdiction of the court, can, after the hearing has begun, raise a question of jurisdiction by objections to evidence.

"12. Whether or not the complainant has been guilty of laches."

Quite the most important question in the case is the one concerning the ownership of the homestead. It is a valuable property, worth $10,000 or more. Its rental value is $850 per annum. Complainant charges that her mother, Cordelia, died seised of the property, it having been conveyed to her on or about December 31, 1878, by defendant Henry D. Brown. She charges further that she knew nothing about this conveyance and her mother's right until shortly before the bill in this cause was filed. The conveyance was not recorded and is not produced. Some of the facts going to make up the history of the matter are not in dispute. Henry D. Brown did, as his answer admits, execute a deed of the property to his wife. This admission is coupled with the statement:

" That the said deed was never delivered to her and was never intended to be delivered unless he died before she did; that it was executed and placed in an envelope

marked to be delivered on his death and was intended as a testamentary disposition of his property in case said Cordelia Brown should survive him; that said deed always remained among his private papers, and that with the knowledge and consent of the said Cordelia Brown the same was destroyed several months before her death and that it was so destroyed before the time she made her last will and testament."

Henry D. Brown purchased the property in 1874. The record title was then and is now in him. It is not claimed that Cordelia paid him for a conveyance of the property. In September, 1893, complainant, at the request of her father, executed and delivered to him a quitclaim deed of the property, which he had caused to be prepared, and this deed was recorded September 8 1893. It contained the following recital:

"The purpose of this deed is to perfect the title to said premises in said Henry D. Brown, the said premises at one time having been deeded by said Henry D. Brown to his then wife, Cordelia Brown, also known as Delia Brown, now deceased, and the deed having been destroyed without ever having been recorded, the said Mabel H. Brown, now Mabel Brown Draper, being the only child and sole heir at law of said Cordelia Brown, deceased, and the sole legatee in the will of said Cordelia Brown, deceased."

This deed recites a consideration of one dollar. No consideration, in fact, passed.

There is no evidence that Cordelia ever claimed to own the homestead or asserted title thereto, unless such evidence is found in the following facts: Henry D. Brown was indebted to John Lawrence in the sum of $12,000, evidenced by a note made by Brown and guaranteed by his wife, payment of which was secured by a real-estate mortgage. A release of part of the mortgaged premises was given, and, under date October 28, 1882, Brown and his wife made a new mortgage conveying the homestead as security for the debt in place of the property released. The mortgage recited the earlier mortgage, the release of a part of the mortgaged premises, and contained the fur-

ther recital that it was given as collateral security to the earlier mortgage. In 1884, Mr. Lawrence assigned both mortgages to William B. Ledyard. Thereafter, under date March 28, 1885, a mortgage conveying the homestead was executed by Cordelia Brown, described as Delia Brown, to Mr. Ledyard, and was later on duly recorded. This instrument recites that in 1880 Henry D. and Cordelia executed and delivered the first mortgage referred to to Mr. Lawrence, that in 1882 they executed and delivered the second mortgage referred to, the assignment of these mortgages to Ledyard, an agreement to extend the time of payment, and that—

"Whereas, by deed bearing date December 31, 1878, the said Henry D. Brown conveyed to the said Delia Brown the premises described in the mortgage executed as aforesaid on the 28th of October, 1882, which deed is still unrecorded   *   *   *   this mortgage being intended as additional collateral security."

Henry D. Brown was not a party to this mortgage. It is assumed that he knew about the transaction at the time it occurred. He paid the indebtedness and the mortgages were duly discharged. In 1888, a mortgage of the homestead was made, describing the grantors therein as Cordelia Brown and Henry D. Brown, husband and wife. Again, in 1890, the homestead was mortgaged, the grantors being described as Henry D. Brown and Cordelia Brown, husband and wife, with the recital that Cordelia conveyed in her individual capacity and as wife of Henry D. Brown. Cordelia Brown was an educated and very intelligent woman. In her will, she does not describe, or refer to, the homestead. The fifth clause of her will, hereinbefore set out, describes other and very much less valuable real estate. She owned, also, an interest in other realty, appraised at the sum of $750, which accounts for the reference to real estate in the 6th clause of the will. The last two mortgages upon the homestead, already referred to, were given to a sister of Cordelia Brown, named Eliza Sprague. The first secured payment of a promissory note for $4,000,

made by Henry D. Brown, the other secured the perform-ance of the condition of an annuity bond. Mr. Gleason was attorney for Eliza Sprague, and represented her in the settlement of a demand against Henry D. Brown for a legacy coming from her father's estate into the posses-sion of Brown. He arranged for the annuity bond and the mortgage securing the same. He drew the bond and the mortgage and he also drew Mrs. Sprague's will and had it in his possession when she died. He drew the quitclaim deed of the homestead which complainant exe-cuted and he drew Cordelia's will. Mr. Gleason testified that before he drew the Sprague mortgage Cordelia told him that a deed had been made to her of the homestead and was not recorded. She did not say whether it had been delivered to her, or whether it was to take effect at Mr. Brown's death. He testified:

"I was working for Mrs. Sprague and I proposed to put that so her property—her rights under that—could never be questioned by any question of the title."

This was the mortgage in which the grantors were de-scribed as Henry D. Brown and Cordelia Brown, husband and wife, and Cordelia is described as conveying in her individual capacity and as the wife of Henry D. Brown. William B. Ledyard is dead. No one living is able, it seems, to explain, if explanation is necessary, the fact that Cordelia as sole mortgagee executed to Ledyard the mort-gage of the homestead. Henry D. Brown testifies that he had forgotten the transaction. He, and counsel for him, attempts, as is natural, to explain the transaction in ac-cordance with a theory that Brown told Ledyard, or that Ledyard otherwise learned, that there was an unrecorded deed which antedated the mortgage assigned to him by Lawrence, and that, when an extension of credit was asked for, this ultra-precautionary method of insuring his secur-ity was adopted. The explanation is not unreasonable, al-though not conclusive. The significance of the mortgage executed by the wife alone as evidence of an asserted own-

ership of the property is affected by the facts that the Lawrence mortgage and the first and second mortgage to Mrs. Sprague, all of them executed later than the deed, are signed by both the husband and wife, who are described in the instruments as grantors.

As further evidence tending to prove the delivery of the deed of the homestead, complainant relies upon the contents of a letter written by Mr. John S. Lawrence September 13, 1882, to his father, from whom Brown desired to procure, as has been already stated, a release of mortgaged premises. Mr. Lawrence has now no independent recollection of the offer of new security made by Brown, and the letter does not refresh or aid recollection. He assumes that in his letter to his father he conveyed the proposition made by Brown. The language employed is:

"He offers his wife's mortgage on the house and lot he occupies and tells me that the lot cost $5,000 and the building of the house $16,000 and a little over, and that he was offered $14,000 for the premises very recently."

The letter was written by the witness at a time when recollection of whatever was said by Brown should be fresh. It is a narration from recollection. Other considerations aside, the competency of such evidence is tested, first of all by the ability of the writer to guarantee that the record accurately represents his knowledge and recollection at the time. 1 Wigmore on Evidence, §§ 746, 747; *Fisher* v. *Kyle*, 27 Mich. 454. Upon the subject of Brown's statements concerning ownership of the property, or what words or language he employed, the witness frankly says:

"I can give absolutely no testimony except the probabilities from my having written that to my father. Outside of these letters I know no more about it than the first man you could pick up on the street."

He testifies that he has no independent recollection of the transaction, that except as to value his information concerning the property was derived from Brown and he

has no doubt that Brown made the statements narrated in the letter. Complainant seeks to give it the effect of an admission made by Brown supporting an inference that his wife owned the property. But the writing, "He offers his wife's mortgage on the house and lot he occupies," is not a memorandum of a statement made by Brown. What is stated is, apparently, a conclusion of the writer. We feel obliged to reject the letter as evidence of an admission by defendant Brown. Its probative value is, in any event, small, for the reason that after making an examination of the title the witness accepted and recorded a mortgage of the homestead executed by Brown and his wife.

We are asked to presume the fact of delivery of the deed of the homestead and the passing of the title thereto by her husband from the fact that Brown procured the quitclaim deed, with its recitals, from his daughter. No one questions the rule that a voluntary conveyance of real estate, deliberately made by a husband to his wife, is binding upon the grantor, and, if the deed is recorded and acted upon by their mutual concurrence, a delivery of the deed and its acceptance may be presumed. *Jackson* v. *Cleveland*, 15 Mich. 94; *Gould* v. *Day*, 94 U. S. 405. Perhaps the rule should be extended to a case in which the heir of the grantee is requested by the grantor to make a reconveyance of the property. There is force to the argument which is advanced that if the deed of the homestead had never been delivered but had been always kept by Brown he would not have desired a conveyance from his daughter. The deed not having been recorded, the obtaining of a reconveyance from the heir, in the absence of other evidence of delivery, and in view of the fact that the admission of its execution relied upon is coupled with a denial of delivery, is in no sense conclusive of the fact of delivery of the original deed, but is, at most, a circumstance to be considered in determining whether there was a delivery. A reason for securing the quitclaim deed may be found in a reported assertion, made by Mr. Draper, of some title

which his wife had to the homestead. It is not unlikely that the person making the report and Mr. Draper each misunderstood some of the facts, viz., that Mr. Draper understood that Brown was proposing to obtain a loan upon the property belonging to his wife, adjoining the homestead, and that the neighbor Pelton, now deceased, who had been applied to for the money, understood Mr. Draper to refer to the homestead in making his assertion with regard to the interest of his wife. As to the oral testimony affecting the question, we are obliged, after a serious but vain effort to harmonize it, to determine whom we will believe. We find that complainant was told by her father, as early as the year 1893, and before she executed the quitclaim deed, the facts now admitted by him. We find that the important recital in the quitclaim deed executed by her was read over to her, in the presence of her husband, and that Mr. Gleason then and before she executed it told her that Cordelia had told him when he drew her will that she did not own the homestead. We use neither of these declarations as establishing the facts stated, but as charging complainant with knowledge of the position of her father with respect to the title to the homestead. Twelve years later the bill in this cause was filed, and meantime no fact concerning this title has come to the knowledge of complainant except the one that Cordelia was sole grantor in a mortgage of the homestead executed to Mr. Ledyard. No application of the rule which requires close scrutiny of the dealings between father and daughter in the relations here disclosed can aid the daughter until it is first determined that he secured from her by her deed a legal or a beneficial interest in property. The mere fact that he made statements to her which she may have believed and which induced her to give the deed, is not a reason for discrediting those statements, any more than it is a reason for finding them to be true. Henry D. Brown testified, and this testimony we hold is not made incompetent by the statute (*Ripley* v. *Seligman*, 88 Mich. 177, 190),

that he kept the deed of the homestead in an envelope in his safe at the brickyard, which envelope he produced at the hearing; that his wife never saw the deed unless it was at the time of its destruction, although she was told by him that the deed was in existence and where to find it. The envelope bears the indorsement, now partially erased but visible, "In the event of my death, the within paper to be recorded. H. D. B."

We have concluded, after a survey of all of the evidence bearing upon the question, and without, except as above stated, relying at all upon the testimony of Mr. Brown or upon that of Mr. Gleason, favorable to defendant Brown, that complainant has not, by a preponderance of evidence (*Devaney* v. *Koyne*, 54 Mich. 116), aided by presumptions which we are bound to indulge, established the fact that her mother died seised of the homestead property. We have been strongly influenced by the terms of the will and by the great lapse of time since complainant knew of the execution, the asserted nondelivery, purpose, and destruction of the deed. We thus dispose, adversely to her, of the first, second, and third of complainant's contentions.

It is not the province of a court of equity to allow or disallow claims against estates of deceased persons, or to administer estates; especially after the subject has been entered upon in the probate court. *Shelden* v. *Walbridge*, 44 Mich. 251; *Lafferty* v. *People's Savings Bank*, 76 Mich. 35, 68, and cases cited: *Dickinson* v. *Seaver*, 44 Mich. 624.

The jurisdiction of the superior court of Grand Rapids, sitting in equity, to determine ownership of the homestead, to construe the will of Cordelia Brown and to instruct and direct the trustee with respect to the trust estate, is affirmed. The question said to involve construction of the will is the one numbered 4 by counsel for appellant. The property described in the 5th clause of the will is encumbered by two mortgages, aggregating $5,500. It was purchased by Cordelia, subject to a $3,000 mortgage, $2,500 was paid

by her and a purchase money mortgage for $2,500 was given. In the mortgage which secures the personal indebtedness of Cordelia, she covenanted that the premises were unencumbered. There are two dwellings upon the property which, since the death of Cordelia, have furnished the only income from the property. The testatrix made no provision for the payment of these mortgages unless it may be said that by the general direction to her executor to pay her debts she contemplated that they would be paid out of that residue which goes to make up the fund under the 6th clause of the will. Whether this was her intention is at least doubtful. Both mortgages were due before she died, and before she made her will. She had paid interest upon them for years. If she had sufficient other estate she could have paid them in her lifetime. The facts that her interest in the property was less than one-half the sum of the mortgage indebtedness and that, if the inventory of her separate estate as made by the executor is correct, her other estate would not pay the mortgage debt—indeed would not pay the larger mortgage—and that she provided in her will for the creation of a fund out of the residue, support the assumption that she thought that the real estate, with the aid of the beneficiary, by an increase in value, by a sale, or otherwise, would in some way take care of itself. If she did not intend that her executor should use her other estate to pay the mortgage indebtedness, then the ultimate devolution of the separate funds created by the will would prevent the trustee from using one fund to augment the other. The owner of the first mortgage could not, in any event, prove his demand against the estate, and was bound to look to the realty. The owner of the other mortgage did not prove his demand. Consequently, assuming, as we do, that payment of the mortgages was not a duty devolved upon the executor by the will, the executor could not pay that indebtedness. *Clark* v. *Davis*, 32 Mich. 154. The owner of the second mortgage might have proved his demand. *Larzelere* v. *Starkweather*,

38 Mich. 96; *Osmun* v. *Oakland Circuit Judge*, 107
Mich. 27.    Nevertheless, the accruing interest, like the
accruing taxes, was a debt to be paid, unless foreclos-
ure of the mortgage was to be submitted to.    *In re Lam-
bie's Estate*, 94 Mich. 489; *Long* v. *Landman*, 118 Mich.
174.    And see *Russell* v. *Wheeler*, 129 Mich. 41.    While
the testatrix could not, by provisions in her will, interfere
with the rights or remedies of her creditors or the holders
of liens, she could, and did, control the action of her exec-
utor and trustee.    The provisions of the will permitted
and required him to devote the income of the real estate to
its preservation alike from decay and from creditors.    He
had no right to use the income from the residuary fund to
preserve the real estate, and only the consent or acquies-
cence of the complainant, to whom, alone, the net income
from both funds belonged, would excuse him in so doing.
The fund itself he could not, by her consent, diminish for
such a purpose because complainant may never take the
fund.    We do not find, as counsel for defendants seem to
do, authority to use the residuary fund to pay the interest,
in the words, "after satisfying the provisions of the fore-
going clauses of this my will," found in the beginning of
the 6th clause.    Such an interpretation is negatived by
the immediate context.    There is no provision of the 5th
clause of the will to be satisfied out of the rest, residue
and remainder of the estate.    But, it is the residue of the
estate, after taking from it the property theretofore de-
scribed, which goes to make up the portion, title to which
vested in the trustee under the 6th clause.    The conclu-
sion reached is, finding no bad faith in the conduct of the
trustee in this regard, that complainant, by her knowledge,
of the methods employed by her father, is equitably es-
topped to complain of his use of the income of the resid-
uary fund to preserve the other fund, but that defendant
Henry D. Brown must account for any diminution of the
fund itself.    As between himself and the cestuis que trus-
tent, the funds are distinct trust funds.    The fact that if
he had not paid the interest or made the repairs the mort-

gages would have, probably, been foreclosed, is not controlling. The trustee and the court must take the will as it is.

It does not follow that the executor must lose the money so paid, if from the fund created by the 5th clause of the will there shall be realized, finally, sufficient to pay the mortgages and more. In such case, equity requires that the surplus shall be used to restore to the fund created by the 6th clause of the will so much of the principal sum thereof as has been diverted. But meantime, and for the purposes of an accounting, the executor must stand charged with the principal of the last-mentioned fund, having, in his favor, a lien upon the surplus, if there shall be any, arising out of the other fund.

The construction we have given the will and the ruling last above made make it proper, if not necessary, to consider the matter of the allowance of the demand of Mary Brown. Assuming that so long as the estate of Cordelia Brown was not formally closed there was a right to a revival of the commission on claims (*Hart* v. *Shiawassee Circuit Judge*, 56 Mich. 592; *Quinn* v. *McGovern*, 97 Mich. 114; *Heavenrich* v. *Nichols' Estate*, 113 Mich. 508), we are all of opinion that, whatever effect it may have to preserve the lien of the mortgages, payments of interest by the executor did not operate to suspend the running of the statute of limitations in favor of the estate. This ruling is required by the provisions of the statute, sections 9375, 9380, 3 Comp. Laws, and the effect given them by previous adjudications. See *Durfee* v. *Abbott*, 50 Mich. 278, 283; *Fish* v. *Morse*, 8 Mich. 34; *Benjamin* v. *Early*, 123 Mich. 93; *Clark* v. *Davis*, 32 Mich. 156; *Church* v. *Holcomb*, 45 Mich. 29, 38; *McGee* v. *McDonald*, 66 Mich. 628; *Sperry* v. *Moore's Estate*, 42 Mich. 353.

Counsel for Mary Brown contend that upon the authority of *In re Lambie's Estate*, 94 Mich. 489; *Russell* v. *Wheeler*, 129 Mich. 41; *Long* v. *Landman*, 118 Mich. 174; *Houghteling* v. *Stockbridge*, 136 Mich. 544, a dif-

ferent ruling should be made. Upon a review of these cases we are satisfied that none of them support the contention that an administrator or executor may, by payment of interest upon demands against the estate, either revive a demand barred by the statute at the decease of the debtor or admit the liability of the estate upon one otherwise barred by the statute. The law has not been settled uniformly in different jurisdictions. The policy of our law, as declared in the statutes and by this court, is to commit allowance of claims against estates to a commission, to refuse allowance of demands barred by statute and to confine the administrator to payment of demands duly allowed. Action upon Cordelia's note was barred by the statute in 1897. *Morse* v. *Hayes,* 150 Mich. 597. It was presented for allowance in February, 1905.

For the reasons given, the decree of the court below will be modified to accord herewith. The modification is substantial and appellant will recover costs of this appeal from Henry D. Brown and Mary Brown. An injunction will issue to restrain Mary Brown from further prosecuting her claim against the estate.

MONTGOMERY, HOOKER, CARPENTER, and MCALVAY, JJ., concurred.