### SHUMWAY *v.* MASON.

ESCROWS—DELIVERY—EVIDENCE—DEEDS—INTENT.
> Though a deed may be delivered so as to become a valid conveyance by depositing it in escrow with a third party, evidence not showing a completed delivery by the decedent grantor, to the third person, with the intent to leave it for the benefit of the grantee, merely having a tendency to show that it was among the papers of the third person, a brother of the grantor and grantee, *held*, insufficient to establish a valid conveyance.

Appeal from Lenawee; Chandler, J. Submitted October 27, 1915. (Docket No. 68.) Decided December 22, 1915.

Bill by Francis R. Shumway and others against Al-

mira Mason and others for partition. From a decree for complainants, defendants appeal. Modified and affirmed.

*Herbert R. Clark* and *Henry I. Bourns,* for complainants.

*J. N. Sampson, Burton L. Hart, Earl C. Michener,* and *Leland F. Bean,* for defendants.

Brooke, C. J. The bill of complaint in this cause is filed for the partition of certain lands in the township of Madison, formerly the property of one Levi Shumway, who died August 3, 1834. The lands having been partitioned into narrow strips of about 17 acres each among his children, two of them, Abigail Shumway and Clarissa Shumway Cole, purchased the shares of the other heirs, and thereafter lived together upon the farm until the death of Abigail Shumway in 1907. Clarissa Shumway Cole, after the death of Abigail, continued to live upon the premises until she died in April, 1911. After the death of Clarissa, the administrators of the estates of the two sisters divided the income from the premises equally, the same as the sisters had done in their lifetime. Upon the trial complainant offered in evidence a quitclaim deed from Clarissa Cole to Abigail Shumway, dated November 29, 1892, and recorded May 28, 1912, more than a year after the death of Clarissa. It is conceded by all parties to the litigation that the land in question cannot be partitioned, but that it should be sold and the proceeds divided among complainants and defendants as their several interests may appear. The only question involved in the case hinges upon the delivery of the deed from Clarissa to Abigail. If said deed was properly executed and delivered, and is to be considered as a valid instrument conveying title, then the complainants in the case take a larger proportionate share of the com-

mon property than they will take if it be held that the said deed never became operative. The facts in the case illuminative of the question involved seem to be the following:

These two old ladies apparently entertaining a strong affection for each other, lived together upon the farm in question for a great many years. While one of them owned a greater area of land in the farm than the other, buildings upon that portion owned by the latter seem to have made their several holdings about equal in value. It is clear from the record that so long as both of them lived they divided equally the proceeds derived from the farm. An impression prevailed among their friends and relatives, gathered from frequent conversations with one or the other of the sisters, that it was the intention of both that the survivor of them should take what belonged to the one who died first. No direct and clear evidence is contained in the record as to how this arrangement was to be carried out, or whether in fact papers had been drawn to effect it. In 1907 Abigail died. She left a last will, by the terms of which she bequeathed her personal property to Clarissa, and she likewise gave to Clarissa a life interest in her real estate. Clarissa at that time handed to the judge of probate Abigail's will and likewise a quitclaim deed from Abigail to her, which upon examination by the judge of probate was found to convey to Clarissa a life estate only in the real estate owned by Abigail. The judge of probate advised Clarissa to pay no attention to the deed as she took under the will as large an estate as under the deed. There is evidence in the record to the effect that upon being advised by the probate judge of the character of the estate conveyed to her, in the deed from Abigail to her, Clarissa said, "I gave Abbie a good deed." After Abigail's death, Clarissa continued to occupy the farm,

189 Mich.—40.

receiving the entire income therefrom up to the date of her own death in 1911, and thereafter the administrators of the several estates of the two sisters continued to divide the income from said farm equally between the two estates. The fact that the deed in question existed appears to have been unknown to any person living for more than a year after the death of Clarissa. It was then discovered by complainant Francis R. Shumway, who was a nephew of Clarissa and Abigail. It was found among the papers of Nathan Shumway, a brother of the two old ladies. The evidence indicates that Nathan Shumway sometimes drew instruments of a legal character, and that while he lived he advised with and drew papers for both Clarissa and Abigail. His relations with one appear to have been as close as with the other. The deed was drawn by him and was witnessed by him. It was dated in 1892, and was kept by him until his death in 1899, and continued to lie in his safe until 1912. There is nothing in the record to indicate that Nathan Shumway held the deed as agent for his sister Abigail rather than as agent for his sister Clarissa, nor is there anything to show that at the time it was left in his possession it was delivered to him by Clarissa with the then present intention on her part to relinquish control over the same. The learned circuit judge who heard the case determined that the evidence supported a finding that the deed was delivered. Counsel for complainant assert that this finding is justified for two reasons:

(1) Because it is recited in the deed that it was signed, sealed, and delivered in the presence of two witnesses. This, counsel urge, is some evidence of delivery, citing *Dennis* v. *Dennis*, 119 Mich. 380 (78 N. W. 333).

(2) They point to the remark made by Clarissa in the probate court, upon being advised of the character of Abigail's deed to her, to the effect that, "I gave Abbie a good deed."

From this statement they argue that Clarissa then intended to convey the idea that she had executed and delivered a deed of her interest in the farm to her sister Abigail and that she had relinquished all control over the same.

There is no doubt about the rule urged on behalf of complainant that a delivery of a deed to a third person for the benefit of the grantee, in the absence of anything conveying a different intention, is as much a delivery as if made to the grantee himself. *Hosley* v. *Holmes*, 27 Mich. 416; *Cooper* v. *Cooper*, 162 Mich. 304 (127 N. W. 266). The assertion of this principle, however, does not aid complainant, because there is absolute lack of evidence tending to show that Clarissa delivered the deed to Nathan Shumway for the benefit of Abigail, the grantee therein named. We are unable to attach to the statement alleged to have been made by Clarissa in the probate court the weight and importance which it possesses in the opinion of counsel for complainant. The statement may have been made by Clarissa to indicate simply that the deed in question had been made and executed, but it does not necessarily carry the meaning that it had been delivered. In the case of *Devaney* v. *Koyne*, 54 Mich. 116 (19 N. W. 772), it was said:

"There is testimony which seems credible, that defendant frequently spoke of having conveyed to Mary; but it is quite possible that in doing so she merely referred to the execution of this deed, which was no secret. * * * The complainant has the burden of proof, and we are not satisfied it preponderates for her. While there is strong testimony in her behalf, there is also very strong testimony that defendant, at any rate, never supposed she had put the property beyond her control."

In the case at bar we think it may well be said that the circumstances strongly indicate that Clarissa never

understood to the day of her death that she had parted with the legal title to her interest in the farm. She lived on the farm for 15 years after the execution of the deed, with her sister, with whom she divided equally the income thereof, and after her sister's death she possessed it all; that part which had belonged to her sister being held by her under the life estate created by the last will of her sister. It is significant that, at the time an inventory of the estate of Abigail was prepared by those responsible for the same, they, after a conversation with Clarissa, did not include Clarissa's portion of the farm in the inventory of Abigail's estate. It may be said that they did not do so because of their ignorance of the existence of the deed from Clarissa to Abigail, and this would be persuasive if it were not for the fact that Clarissa, from whom they obtained their information, certainly knew of the deed and knew whether or not she had delivered it to Nathan Shumway with the purpose of relinquishing all control over it.

After a careful consideration of all the testimony in this record, and assuming that the deed in question was genuine and properly executed (of which we have no doubt), we are unable to say that there is such evidence of delivery as to warrant a judicial finding to that effect, in view of the situation of the parties and all the circumstances disclosed by the testimony.

The decree of the court below ordering a sale and partition of the property is affirmed. That portion of the decree fixing the proportionate shares to which the parties are entitled is reversed, and a decree will be entered in this court fixing said proportions as if the deed in question had never been made, with costs of both courts to appellants.

Person, Kuhn, Stone, Ostrander, Moore, and Steere, JJ., concurred. Bird, J., did not sit.