THOMAS H. GOODMAN v. MARY SHIPLEY.

*Married women—Liability on contract.*

The defendant, a married woman, is held liable under the rule of *Hirshfield v. Waldron,* 83 Mich. 116, and *Meads v. Martin,* 84 Id. 306, for medical services rendered by the plaintiff for her and for her minor daughter by a former marriage, who was living with her, at her request, and charged to her, and for which she agreed to pay.[1]

Error to Saginaw. (Wilber, J.) Submitted on briefs April 17, 1895. Decided May 21, 1895.

*Assumpsit.* Plaintiff brings error. Judgment reversed, and that of the justice affirmed. The facts are stated in the opinion.

*George A. Kendall,* for appellant.

[1] For cases bearing upon the question of the liability of married women upon general contracts, see *Mosher v. Kittle,* 101 Mich. 345, 348, and note; *Building & Loan Association v. Billing,* 104 Id. 187.

*Trask & Smith,* for defendant.

LONG, J.    This action was commenced in justice's court, where plaintiff had judgment.    It was removed to the circuit court by *certiorari,* and the justice's judgment there reversed.    The action was for medical services and medicines furnished by the plaintiff to the defendant and her daughter.[1]    The defense interposed was that the defendant was a married woman, and therefore not liable for such services and medicines.    The only question raised is whether there is any evidence to support the plaintiff's claim.

Plaintiff testified substantially that he was a practicing physician; that he was sent for several times by the defendant, and visited her in January, February, and April, 1893, making some ten or more visits, which were worth $2 each visit; that he was sent for by defendant to visit her daughter by a former marriage, and made some four or five visits; and also that upon several occasions he prescribed for her at his office.    He further testified:

"Defendant's husband came to me, and told me his wife sent for me.    *   *   *   Soon after I began visiting defendant, she told me that she had sent for me; that she had property of her own, and would see me paid; that just then she was hard up for money, part of her property having no tenants, but she would be responsible for my pay.    I charged the first visit to her, and charged the whole account to her.    It has never been charged to any other person, and I have never asked any other person to pay the account."

On cross-examination the plaintiff testified that all the bargain he had with defendant was as follows:

"On the second or third visit, defendant told me about owning the property, and that she would see me paid; that she did not have money by her then; was hard up, and one of her houses was idle.    I think she repeated the same, in substance, in April.    She told me about the same, in substance, when I was called to see the girl, in

---

[1] The daughter was a minor.

May. We talked about her coming to the office when she was able, the last of May or first of June, and we made another contract. I told her what she would save by coming to the office. She stated that she was canvassing some, and she would stop in the office when she was out on that business. I told her the price, and she came off and on during two months. She said she would pay me, and regreted she did not have the money. She told me of whom she expected to have money, and when she got it she said she would pay me. She repeated she would pay me soon when she got the medicine in January last, and said she expected money soon. She dunned herself in the courthouse, and said she expected the money any day. She kept me in hopes. She promised me as late as June this summer, and said that she soon hoped to have the money. That is all I recollect as to my employment and pay. I knew that she was a married woman, living with her husband, while I doctored her, and the daughter I visited seemed to be living in the family same as a child would."

There was testimony, therefore, before the justice, upon which to base his judgment that the contract was made directly with the wife, and not with the husband. The medical services were rendered to her and a child by a former marriage, for which she agreed to become responsible.

The case falls so clearly within the rule of *Hirshfield v. Waldron*, 83 Mich. 116, and *Meads v. Martin*, 84 Id. 306, that any discussion of the power of a married woman to bind her separate estate in such a case is quite unnecessary. Counsel for defendant, however, contend that a different rule was laid down in *Howe v. North*, 69 Mich. 272. The rule there stated is not in conflict with the cases above referred to. The plaintiff expressly testified in that case that the husband and wife (who were her father and mother) made the contract with her. It was said, however, that, if the defendant made the contract claimed, she simply became responsible as a surety; and the facts of that case warranted that statement.

We think there was testimony upon which to base

the judgment. We cannot weigh it, and, though there was contradictory evidence, the justice decided the question of fact, which neither this Court nor the circuit court can pass upon.

The judgment of the circuit court will be reversed, and the judgment of the justice affirmed. Plaintiff will recover costs of circuit court and of this Court.

The other Justices concurred.