DETROIT CHAMBER OF COMMERCE *v.* GOODMAN.

MARRIED WOMEN — VALIDITY OF CONTRACTS — SUBSCRIPTION FOR IMPROVEMENTS.

> The subscription of a married woman to a fund for the purpose of securing the location of a business block in the vicinity of property owned by her is not within the power to contract conferred by the married woman's act (2 How. Stat. § 6295), although her property is incidentally benefited by the improvement. MOORE and GRANT, JJ., dissenting.

Error to Wayne; Aldrich, J., presiding. Submitted June 4, 1896. Decided July 31, 1896.

*Assumpsit* by the Detroit Chamber of Commerce against Ulenna H. Goodman for money subscribed to secure the location of the Chamber of Commerce Building near defendant's property. From a judgment for plaintiff, defendant brings error. Reversed.

*Albert J. Chapman,* for appellant.

*Griffin & Warner,* for appellee.

MOORE, J. The plaintiff sued the defendant to recover for an amount due on a subscription reading as follows:

"DETROIT, MICH., 1892.

"We, the undersigned, being desirous of locating the new Chamber of Commerce Building on the northeast corner of State and Griswold streets, where the directors of said association have agreed to purchase a site 88x100, if it can be had for $60,000, to provide for the difference between that amount and the cost of the property, viz., $118,000, hereby agree to pay to the treasurer of the Chamber of Commerce Association the sum set opposite our names upon the following conditions and in the following manner."

Then follow the conditions and list of subscribers. The subscription was not paid. The plaintiff sued the defendant, and obtained judgment. The defendant appeals.

There were two counts in the plaintiff's declaration. A copy of the subscription sued upon was set up in the declaration. The defendant pleaded the general issue, but did not by affidavit deny the execution of the subscription. All those assignments of error relating to the signature of the defendant, the refusal of the judge to allow the comparison of handwriting as to the signatures, the cross-examination of Mr. Cozzens growing out of his testimony as to the defendant's signature, and the charge of the judge in which he charged that the defendant must be deemed to admit the execution of the instrument, under the pleadings, are none of them well taken. By failing to file an affidavit denying the subscription, the defendant admitted its execution. Cir. Ct. Rule No. 79.

The only important question upon the record is, was it competent for Mrs. Goodman to make this subscription? When it was made she was a married woman, who owned the Griswold House, worth, with the real estate, about $100,000. This property was about a block away from the proposed Chamber of Commerce site. The plaintiff claims that defendant's subscription, with others, was the moving cause of its purchasing the site; that it was believed by the defendant that, if the old livery stable occupying the site was torn away, and a fine building erected thereon, it would increase the value of defendant's property many times more than the amount of her subscription, and for that reason the subscription was made by her. It is also argued that the erection of the Chamber of Commerce Building did increase the value of her property, that her separate estate was benefited, and that she is not under disability under the statute. On the part of the defendant it is claimed that under the common law she could not make this contract, and that the married woman's act (2 How. Stat. § 6295) does not allow her to make such a contract. It is claimed

that she may contract, sell, transfer, convey, devise, or bequeath her real and personal estate, and cannot do more; that her power is not general, but statutory; that possible incidental benefits cannot support a contract made by her,—citing *Russel* v. *Bank*, 39 Mich. 671 (33 Am. Rep. 444); *Powers* v. *Russell*, 26 Mich. 179; *Emery* v. *Lord*, Id. 431; *West* v. *Laraway*, 28 Mich. 464; *Johnson* v. *Sutherland*, 39 Mich. 579.

The relations of husband and wife towards each other and their property rights under the common law are very exhaustively discussed in the case of *Tong* v. *Marvin*, 15 Mich. 60. Justice COOLEY also gives an interesting history in this case of the early legislation in this State in relation to the rights of married women, by which it is made to appear that the purpose of this legislation was to preserve to the wife all her rights in her own property, with as full power of control and disposition as if she had remained unmarried. It has been uniformly held by this court that our statutes do not authorize a married woman to become personally liable on an executory promise, except concerning her estate already possessed, or referring to it, or in relation to property to be acquired by the contract, or in consideration of it. A note given for any other consideration is void (*Kenton Ins. Co.* v. *McClellan*, 43 Mich. 564); and unless the consideration for this subscription relates to the separate estate already owned by defendant, or refers to it, or is in relation to property to be acquired by the contract, or in consideration of it, it would be void. On the other hand, if the consideration of this subscription was that the estate which she then possessed was to be increased in value, and if, as a result of what was done, her estate in fact was increased in value, would it not be a sufficient consideration for the contract, and make it valid?

In *Tillman* v. *Shackleton*, 15 Mich. 447 (93 Am. Dec. 198), it was held that, where a married woman keeps a boarding house with the consent of her husband, and controls the entire business, contracts of purchase

made by her for the purposes of the business must be considered as contracts in relation to her sole property, and therefore binding upon her. In *Campbell* v. *White*, 22 Mich. 185, it was held that a married woman residing with her husband, and owning a separate estate, could be held liable for merchandise purchased by her on her individual credit, though the merchandise was family necessaries, and was actually used by the husband's family, and in his household. Her liability was not contingent upon her ownership of other separate estate, or on the character of the goods bought, or their disposition. It depended on the fact that the property was obtained upon her credit. Her promise to pay for the articles' was an undertaking to pay for her separate property. In *Rankin* v. *West*, 25 Mich. 195, it was held that a married woman could carry on a meat market in her own name, and that an agreement to pay for stock furnished to supply the market was valid, though the business was carried on by her husband acting as agent. In *Hirshfield* v. *Waldron*, 83 Mich. 116, it was held that a married woman living with her husband was liable for the price of clothing purchased by her for a minor son, and charged to her by her direction, she agreeing to pay for the same. These decisions seem to be put upon the ground that the sale of the property was the consideration for her promise, and made her liable under the statute. The purchase of the goods by her made them her separate property. The use made of them afterwards was not material.

In *Arthur* v. *Caverly*, 98 Mich. 82, it was held that a wife who joins with her husband in a warranty deed of his land, the only consideration for which is the conveyance to her of other land, is jointly liable with him for a breach of the covenants in the deed. It was held that in such case she is contracting with respect to property to be held and owned as her separate estate; and that, while a married woman has no power to make contracts except concerning her separate estate, if the obligation was

entered into for her own purpose, or the agreement was concerning property to be acquired by her in consideration of the contract, in either case she would be liable.

The case of *Emery* v. *Lord*, 26 Mich. 431, has long been a leading case in relation to the contracts of married women. While in that case it was held that a married woman is not liable upon her promissory note given for the purpose of securing a debt of the husband, it was also held:

"If the balance of the account for which the note was given was equitably due from the wife, and if, as between her and her husband and the plaintiff, there was an equitable obligation on her part,—as if the materials furnished by the plaintiff were thus used in improving her property, without her having paid or become bound to pay to the husband or any one else for them, * * * —then, whether the note was given in extinguishment or only as security for the indebtedness, and though the credit might originally have been given to the husband, there was a good and valuable consideration for the note, and she would be bound. It would then be, in effect, substantially a debt incurred on account of her own separate property, with respect to which she was, by our statutes, for all purposes of this kind, to be treated in all respects as if she had been unmarried."

In *Gillespie* v. *Beecher*, 94 Mich. 374, it was said:

"The married woman's act was passed for the protection of married women. It was intended as a shield, and not as a sword. Its purpose was to enlarge her rights, not to contract them; and certainly it was not meant to deprive her of the right, either acting alone or jointly with others, of protecting her interests in property, either real or personal."

I think the doctrine to be gathered from these cases is that, if the debt or obligation made by a married woman was incurred on account of her own separate property, or if the agreement was concerning property then owned by her, or to be acquired by her in consideration of the contract or agreement, she would be liable. Would the subscription sued upon come within either of those condi-

tions? If this had been a contract to increase the value of defendant's property by making improvements upon it, there could not be any question of her liability. If her purpose in making this subscription was to increase the value of her property by having improvements made in its immediate vicinity, which would not be made unless the subscription was made, I think it becomes a contract concerning her separate property; and if, as a result of her subscription, substantial improvements are made which increase the value of her property, she does, in fact, acquire property as a consideration for her subscription, and she would be liable upon it. The circuit judge left the questions to the jury as to why the subscription was made,—whether it was made for the purpose of benefiting the defendant's individual estate, whether it was acted upon by the erection of the Chamber of Commerce Building, and whether the effect of the action of the plaintiff was to increase the value of defendant's individual property. His charge in relation to those questions was without error.

It is suggested by counsel for defendant that the married woman's act is unconstitutional, at least in part. The present statute has been in existence upwards of 40 years. It has been before the courts for construction many times. We are not inclined at this late day to discuss its constitutionality.

The judgment should be affirmed.

GRANT, J., concurred with MOORE, J.

MONTGOMERY, J. I agree fully with my Brother MOORE that the enlarged powers of a married woman, under the married woman's act (section 6295, 2 How. Stat.), include the right not only to dispose of property already acquired, but to make contracts for the acquisition of property, and contracts directly relating to property owned by her. But I am not able to agree that an executory contract made by a married woman, by which

she agrees to donate money for any enterprise, public or private, which may incidentally benefit her property, is enforceable.  The statute reads:

"The real and personal estate of every female, acquired before marriage, and all property, real and personal, to which she may afterwards become entitled by gift, grant, inheritance, devise, or in any other manner, shall be and remain the estate and property of such female, and shall not be liable for the debts, obligations, and engagements of her husband, and may be contracted, sold, transferred, mortgaged, conveyed, devised, or bequeathed by her in the same manner, and with the like effect, as if she were unmarried."

The statute does not intend to remove all the common-law disabilities resting upon married women.  The design was to confer upon a wife the right to enjoy and dispose of her own property, and to acquire property, and the statute should not be extended by construction to cases not embraced in its language nor within its design.  See *De Vries* v. *Conklin*, 22 Mich. 259.  Such an engagement as that involved in this case is not one by which the wife conveys or grants her property, nor is it one by which she acquires property by gift, grant, inheritance, or in any other manner.  The most that can be said is that an incidental benefit may result to property which she already owns.  In *Russel* v. *Bank*, 39 Mich. 671 (33 Am. Rep. 444), it was said by Mr. Justice COOLEY: "The test of competency to make the contract is to be found in this: That it does or does not deal with the woman's individual estate.  Possible incidental benefits cannot support it."  It is true that case was a case involving suretyship, but it is no more true in this case than in that that by the contract engagement the married woman acquires property, and in that case as well as this there was the contention and the fact of incidental benefit to the married woman to result from the engagement.  I think the reasoning of that case not inapplicable, and, basing my conclusion upon the statute itself, I am convinced that this undertaking is

not within the power conferred upon married women by the act.

The judgment will be reversed, with costs, and no new trial granted.

LONG, C. J., and HOOKER, J., concurred with MONTGOMERY, J.