*In re* REID'S ESTATE.

STOCKWELL *v.* SEDINA.

1. Appeal and Error—Directing Verdict—Trial.
   In reviewing, on error, a verdict directed against claimant, who presented a claim against the estate of his deceased and divorced wife, his evidence is entitled to its greatest probative force.

2. Estates of Decedents—Revival of Commission on Claims—Executors and Administrators.
   Revival of the commission on claims of a decedent's estate is a matter of right before the estate is closed; the petition need only show that fact and that petitioner is a creditor whose claim has not been passed on by the commission. On the trial, claimant's right to revive such commission was not a proper issue, although defendant charged that the order was fraudulently obtained.

3. Same—Evidence.
   The court erroneously directed a verdict for defendant estate on testimony tending to show an agreement of decedent with claimant to repay him what he might expend in keeping up a life insurance policy upon her father's life, on evidence

showing by her admissions a contract to settle the matter by paying him $1,200 after he had kept up the premiums for a number of years.

4. SAME—INSURANCE—HUSBAND AND WIFE.

Where claimant agreed with the member of a mutual benefit society to keep up his insurance, paying all premiums thereon, in consideration of insured making claimant's wife the beneficiary under the policy, and where the wife also promised to repay her husband from the proceeds of the policy, on which he paid about $1,200, the wife acquired a vested interest in the policy which the law will protect, and the insured could not change beneficiary so as to deprive her of rights under the policy, although it provided for change of beneficiary at the option of insured.

5. SAME—SEPARATE ESTATE OF WIFE—CONTRACTS.

Such interest or equity related to the wife's separate estate, and a contract to reimburse her husband for sums paid on the premiums was valid.

6. SAME.

The husband, who was prevented by divorce from the wife and by imprisonment for crime from completing his agreement, could recover as on a *quantum meruit* for the sums he paid in part performance of the contract, after the policy had been paid to his wife.

7. SAME—EVIDENCE.

Averments contained in a bill for divorce filed by decedent against claimant were not competent evidence of the relations existing between claimant and his wife, and such relations were immaterial to the issue.

Error to Ingham; Collingwood, J. Submitted April 5, 1912. (Docket No. 56.) Decided May 31, 1912.

Claim by Joseph W. Stockwell against the estate of Mary E. Reid, deceased, for money paid to the use of decedent. The claim was allowed by the commissioners on claims. Thomas H. Sedina, executor of said estate, appealed to the circuit court. Judgment for defendant on a directed verdict. Claimant brings error. Reversed.

*Black & Roe,* for appellant.

*Gardner & Hood,* for appellee.

Stone, J.   This case involves a claim presented by Joseph W. Stockwell against the estate of Mary E. Reid, deceased.   The claimant and deceased were formerly husband and wife, having been married on the 5th day of May, 1879.   They lived together until some time in the year 1900.   They were subsequently divorced on a bill of complaint filed by the wife on January 7, 1901, in the circuit court for Benzie county, in chancery.   At the time the decree of divorce was granted, claimant had been arrested and was thereafter tried in the circuit court for the county of Genesee for the crime of conspiracy and sentenced to the State prison at Jackson on or about the 22d day of January, 1903.   In the month of May, 1905, Mary E. Stockwell was remarried to a man by the name of Reid with whom she lived but a short time; she having been killed in the month of August of the same year, leaving a last will and testament which was admitted to probate by the probate court of Ingham county on September 8, 1905.   Following the probate of the will of Mrs. Reid, and while the claimant was still in prison, commissioners were appointed by the probate court to receive and allow claims against her estate.   The commissioners made their report to the probate court showing the various claims allowed on the 17th day of February, 1906; the claimant still being in prison.

The claimant, after being confined for about 3½ years, was paroled, and on being released from prison, and on September 27, 1907, petitioned the probate court for a revival of the commission on claims in order that he might have an opportunity to present a claim against said estate, which petition was granted by the court.   No claim was proved before the commission thus revived, and the claimant again petitioned the probate court for a revival of the commission, which was granted.   Owing to the failure of the commissioners to act within the time provided in the order, the claimant was unable to present the proofs of his claim, and he again presented his petition for a third revival of

the commission.   This last petition was granted December 29, 1908, by the probate court.   The claimant then presented his claim before the commissioners who allowed it at the sum of $3,493.30, and made their return to the probate court on January 30, 1909.   From this allowance the administrator appealed to the circuit court.

On the trial of the case, the claimant by his attorneys waived all claims against said estate except one of $1,200, which amount he claimed he had paid as assessments upon a life policy held by the father of the deceased in the Royal Arcanum Insurance Association; she claiming to be a beneficiary under the policy, and claimant claiming that such money had been paid by virtue of an agreement between the insured, the deceased, and the claimant to the effect that what the claimant paid should be paid back to him on the maturity of the insurance.

Owing to the course which the trial took in the circuit court, the testimony offered on behalf of the claimant is entitled to its greatest probative effect.

To support his claim, on the trial the claimant offered testimony showing that Thomas Shivley, the father of deceased, was insured in the association above stated.   The date of the policy was September 2, 1881, and the amount was $3,000.   The original beneficiary was Catharine Shivley, the wife of the insured.   The beneficiary was changed November 28, 1886, to Andrew J. Shivley, son; and again in August, 1891, to Catharine Shivley two-thirds, and Andrew Thomas Shivley, grandson, one-third. It was changed again November 7, 1894, to Andrew T. Shivley, grandson, $1,000; Mary E. Stockwell, daughter, $2,000.   It was changed again on March 27, 1895, to Mary E. Stockwell, daughter, $3,000.   That was the last change, and Mary E. Stockwell was the beneficiary at the time of the death of Thomas Shivley, which occurred March 4, 1904, and she drew the amount of $3,000 upon said policy or certificate.

The claimant's evidence tended to show that soon after May 24, 1891, there was a meeting of the relatives of

Thomas Shivley at the old homestead in Lansing, which meeting included Thomas Shivley, Mrs. Stockwell, the deceased, Mr. Stockwell, the claimant, Mr. Sedina, a brother-in-law, and one Levi W. Shivley.

Levi W. Shivley testified that a conversation was had in relation to the insurance policy in which all present took part. At that time Andrew Shivley, a brother of the deceased, had recently died, and the father, Thomas Shivley, requested a conversation and interview over the matter of the insurance, as there was an assessment due or about to become due; that Mrs. Stockwell said to the witness:

"Now what can be done about it? We must have an understanding what should be done about it. I have a proposition to make to you. If it will be changed suitable to us, Stockwell and I will go on and keep the insurance up."

When witness asked her on what conditions they proposed to put in that, she replied, "Thomas Andrew (son and only heir of Andrew Shivley, who is dead) shall have a share of it, like one-third," and two-thirds was to go to Mrs. Stockwell. And Mrs. Stockwell suggested that:

"Whoever keeps this up should receive back what they paid in."

Mr. Stockwell proposed like this:

"That if they would fix this beneficiary so that little Andrew would have one-third and Mary (Mrs. Stockwell) two-thirds, he would keep it up himself."

The following question and answer appear:

"Claimant's counsel: As I recall it now, Mr. Shivley, you stated that Stockwell made a proposition that he would keep up the premiums on the policy provided that the policy was changed so that Stockwell's wife would have a two-thirds interest and little Andrew a one-third interest?

"A. Yes, sir; Mr. Sedina said it was all right; Mrs. Stockwell said all right; all of them there said all right.

*  *  *  They acquiesced with the thing and matters as it was put before them."

Levi W. Shivley further testified:

"I had a talk with my sister, Mary Stockwell, with regard to the insurance and what was to be done with Stockwell, and she said to me, 'Whoever keeps this up shall be paid for all he puts into it,' and she says, 'Mr. Stockwell stands ready and willing to keep these payments up.  *  *  *  After Thomas Shivley's death a short time, I had a conversation with Mrs. Stockwell with regard to the property and this insurance.  When she was waiting for the insurance we had a conversation about it, and I said I hoped when she got it she would carry out the agreement as it was made by Mr. Sedina, my father, and Mr. Stockwell and herself.  She said there had been some misunderstanding about the insurance between little Thomas Andrew's mother and herself some way.  She said she was perfectly willing Stockwell should have back what he had paid in."

To further support his claim, claimant offered the testimony of one Fred C. Reichert tending to show that during the years 1891 to 1900 the claimant paid the assessments on this insurance as they fell due; that in 1900 or 1901, while claimant and deceased were talking over some other matters in relation to some land that he wanted her to deed back to him, the insurance matter came up, and the claimant told her that he did not feel like going on and paying this insurance any longer; that he did not know that he was ever going to get anything out of it, and she asked him how much money he had paid into it, and he said somewhere in the neighborhood of $1,200, and she said he would get every penny of it back for what he had paid up to that date; that he would get back what he had paid into it just as soon as she received it; that she there agreed to pay him $1,200 when she got it; that this was a short time before the final separation of the claimant and deceased; that afterwards in 1904, after her father died, said Mary E. Stockwell told the witness that she was going to pay the claimant $1,200 when she got her money.

In further support of his case, claimant offered the deposition of one William A. Miller to the effect that at one time the deceased told him she had an insurance on her father's life, and when claimant was away she borrowed money from the deponent to pay the premiums, and the claimant repaid the money. There was evidence showing the amount of monthly payments made upon this policy from May, 1891, down to and including March, 1904.

At the close of the testimony, defendant's counsel moved the court to direct a verdict for the defendant for the following reasons:

" (1) The court has no jurisdiction to litigate the question or questions involved because the probate court had no legal right to revive the commission, and because Mr. Stockwell procured the revival by deception and fraud which is disclosed by the evidence.

"(2) There is no evidence to establish an agreement on the part of Mrs. Stockwell to reimburse the party, Stockwell, for the moneys which he promised to pay, the assessments on the life of Thomas Shivley.

"(3) There is no evidence from which the jury can determine what, if any, sums Stockwell advanced or paid to keep up the assessments on the certificate issued on the life of Thomas Shivley.

"(4) Even though there is some evidence tending to show that Mrs. Stockwell agreed with Stockwell that, if he should pay the assessments on the certificate issued by the Royal Arcanum on the life of Thomas Shivley, she would pay him back whatever sum he should so advance or pay, such promise and agreement on her part was not binding upon her because she was at the time of such promise a married woman and was under no legal obligations to pay the assessments, and such payments do not affect her separate property.

" (5) Because it appears from the undisputed testimony in the case that if an agreement was made by which Mrs. Stockwell became obligated to pay Mr. Stockwell all moneys necessary to keep up the payments, Stockwell did not perform his part of the agreement, and by his own misconduct made it impossible to keep good his contract and agreement."

This motion was granted by the court, and the learned

circuit judge directed a verdict for the defendant in the case for the announced reason that it appeared that there was no evidence to go to the jury, that no facts had been shown which, in the opinion of the court, should take the case to the jury, and that the plaintiff had not made a case; and a judgment for the defendant was thereupon entered.

The claimant has brought the case to this court by writ of error, assigning a large number of errors in the statements of defendant's counsel in his opening to the jury, in the rulings relating to the admission of evidence, and in directing a verdict for the defendant. Counsel upon both sides have discussed the questions raised by the assignments of error and involved in the points urged by defendant's counsel in his motion to direct a verdict, and we shall follow the same course.

1. Was the question whether the probate court had the legal right to revive the commission because said revival was procured by fraud and deception one that was involved in the trial of this case? Section 9373, 3 Comp. Laws, as amended in 1901 (Act No. 70, Pub. Acts 1901), clearly authorizes and requires the probate court to revive a commission on the application of a creditor who has failed to present his claim. As this court held in *Bresler* v. *Wayne Probate Judge,* 152 Mich. 167 (115 N. W. 960), the policy of this statute, as indicated by the decisions of this court, is to permit a creditor to present to a revived commission any claim not theretofore presented so long as the estate remains open. The order reviving the commission is a matter of right which may be made *ex parte* and without notice. There is no distinction in principle between an application to revive a commission to hear a part of a claim which might, if known, have been presented to the original commissioners, and an application for a second revival to hear a part of a claim, or a distinct claim, which might, if known, have been presented to the commissioners upon the first revival of the commission. We think that it is well set-

tled in this State that a revival of a commission under the statute at any time before the estate is closed is not a matter of discretion, but of right. All that was necessary to be shown in the petition was that the petitioner was a creditor whose claim had not been presented and passed upon by the commission, and that the estate was not yet closed. *Hart* v. *Shiawassee Circuit Judge*, 56 Mich. 592 (23 N. W. 326); *Quinn* v. *McGovern*, 97 Mich. 114 (56 N. W. 226); *Heavenrich* v. *Nichols' Estate*, 113 Mich. 508 (71 N. W. 852); *Draper* v. *Brown*, 153 Mich. 120–138 (117 N. W. 213). We do not think there is any merit in the first reason urged for a directed verdict.

2. The second and third reasons for defendant's motion are directed at the sufficiency of the claimant's evidence showing an agreement on the part of the deceased to pay the claimant the money he had advanced upon her father's insurance. We shall not review the evidence which we have only in part called attention to. It should be borne in mind that the question here to be determined is whether there was any evidence to go to the jury upon this branch of the case, taking the most favorable view of claimant's evidence, and bearing in mind that the weight of this evidence was for the jury. A careful reading of the record leads us to the conclusion that it cannot be said there was no evidence to submit to the jury upon this branch of the case, and we therefore think that there was no merit in the second and third reasons urged for a direction of verdict.

3. The defendant's fourth reason for the motion to direct a verdict was predicated upon the claim that the contract, if made, was not one in relation to her separate property; the deceased being at the time a married woman. This is in our opinion the most meritorious question in the case. It must be conceded as a general proposition that, under this certificate of insurance, Thomas Shivley in 1891 had the right to change the beneficiary, and therefore, under the constitution and laws of the society, he could name a new beneficiary. But this state-

ment requires some qualification.   After the deceased, by her husband, had made payments on the assessment in pursuance of the claimed agreement with her father, such change of beneficiary could not deprive Mrs. Stockwell of her equity in such insurance.   That from and after the making of such agreement, and the payments of assessments in pursuance thereof, she had an equitable interest in such insurance which she could enforce against the insured.

The rule is well stated in Niblack on Accident Insurance and Benefit Societies (2d Ed.) in the latter part of section 227, as follows:

" A beneficiary who pays the assessment on a certificate voluntarily and gratuitously, and not under a contract with the assured, acquires no vested interest therein as against a person afterward named as beneficiary by the member.   A member may change this beneficiary, though the latter has paid the assessments and has possession of the certificate.   But it has been held that where a person became a member of a society under an agreement with the beneficiary designated in his certificate that the beneficiary should pay all assessments, and he paid them under the agreement, the beneficiary acquired a vested interest in the certificate, and the member could not afterward make another designation.   A provision of the charter or of a contract of the society, declaring that a member shall have a right to make a change of his beneficiary without the consent of the latter, applies when the original designation is in the nature of an inchoate or an unexecuted gift, and where there is no agreement on the part of the member, the society, and the beneficiary that no change shall be made.   It does not prevent an express contract between the member, the beneficiary, and the society that a vested right shall pass to the beneficiary "—citing *Maynard* v. *Vanderwerker* (Sup.), 24 N. Y. Supp. 932; *Smith* v. *Benefit Society*, 123 N. Y. 85 (25 N. E. 197, 9 L. R. A. 616).

To the same effect, see 2 Bacon on Benefit Societies and Life Insurance (3d Ed.), latter part of section 295.

In *Stronge* v. *Supreme Lodge K. of P.*, 189 N. Y. 346 (82 N. E. 433), many authorities are reviewed, and

the Court of Appeals there held that the designation of the beneficiary of a mutual benefit certificate of insurance, in pursuance of a contract fully performed by the beneficiary, cannot be revoked and a new beneficiary named at the pleasure of the insured, even though the by-laws of the association provide that a change of beneficiary may be made at any time without the consent of the existing beneficiary. In that case the court cites with approval the case of *Webster* v. *Welch*, 57 App. Div. (N. Y.) 558 (68 N. Y. Supp. 55), in which case a mutual benefit insurance company had issued a certificate upon the life of the deceased in favor of one of his daughters, naming her as the sole beneficiary under an agreement that she should care for her father during life, which agreement was carried out. Subsequently the deceased procured the issue of new certificates which changed the designation of the beneficiary. It was held that the daughter acquired a vested interest in the certificate and that she could not be deprived of that interest by subsequent changes procured by the member in derogation of her rights. Many authorities might be cited in support of this position. We will content ourselves by citing the following: *Supreme Council Royal Arcanum* v. *Tracy*, 169 Ill. 123 (48 N. E. 401); *McGrew* v. *McGrew*, 190 Ill. 604 (66 N. E. 861); *Leaf* v. *Leaf*, 92 Ky. 166 (17 S. W. 354, 854); *Carter* v. *Carter*, 35 Ind. App. 73 (72 N. E. 187); *Supreme Council Catholic Benevolent Legion* v. *Murphy*, 65 N. J. Eq. 60 (55 Atl. 497); *Benard* v. *Grand Lodge A. O. U. W.*, 13 S. D. 132 (82 N. W. 404).

The rule is stated in 3 Am. & Eng. Enc. Law (2d Ed.), at page 993, as follows:

"While the established rule is that the beneficiary's interest in a mutual benefit certificate is a mere expectancy, there are some circumstances which modify his operation. Where the member, upon taking out the certificate, makes an agreement with the beneficiary that the latter should pay the assessments, and that no substitution should be

made, the beneficiary, upon performing this agreement, acquires a vested right"—citing many cases, including some of those above cited.

See, also, 29 Cyc. p. 128, and cases cited.

It appears and is undisputed that at the meeting in May, 1891, between the father, Thomas Shivley, the deceased, the claimant, and others, that the father was desirous of having some provision made for the payment of the assessments upon his certificate which he was unable to pay. It was perfectly competent for him to make an arrangement with the deceased in and by which if she would make the payments in the future she should become the beneficiary in the certificate. It is claimed that such an arrangement was made and carried out. The change in beneficiaries was subsequently made giving her an interest first, and finally the whole of the benefits under the certificate, and she drew the whole amount thereof. This arrangement gave her a trust interest in this certificate. It may have been an equitable interest only, but it was such an interest as the law will recognize. It was a vested interest; it was to her solely; it related to her sole property in the certificate; it was more than an expectancy; and we think the authorities cited by defendant are readily distinguishable from those which we have above cited. The case falls in principle within that of *Grand Lodge A. O. U. W.* v. *Beath*, 150 Mich. 657 (114 N. W. 662). The majority opinion in that case, recognizing the trust relation and trust fund, holds that under circumstances somewhat similar to those in this case, where the member had no property or means of support and could not even pay his premiums and keep his policy alive unless he could borrow money upon it, an arrangement by which he did obtain such relief was properly sustained. See, also, *Woodruff* v. *Tilman*, 112 Mich. 188 (70 N. W. 420); *Cowin* v. *Hurst*, 124 Mich. 545 (83 N. W. 274, 83 Am. St. Rep. 344). In this last-cited case an equitable rule is invoked that a trustee cannot be heard to say:

"I will not carry out the trust, because the parties had no legal right to repose the trust in me."

It is only necessary to go a step further to hold that there is a claim here that should have been presented to the jury: Mrs. Stockwell, having an equitable interest in this policy or certificate, had the legal right to pay the assessments and claim her interest; she had also the right and power to agree with the claimant that he should make the payment and that she would reimburse him. It related to her separate property. That is the claim here. In our opinion it should have been presented to the jury under proper instructions; and we do not think that the claim of the defendant in the fourth reason stated can be sustained. The claimed contract in this case had a direct reference to the avails of the insurance which was to be thereafter received by the decedent.

It should be borne in mind that this is not a case where the insurance company or society is resisting the claim of the decedent. The money was paid to her, and we think that the alleged agreement with her husband was with reference to a vested interest in her separate estate.

4. We shall not discuss at length the fifth point urged by defendant's counsel. It is only necessary to say that the claimant seeks to recover for moneys which he actually paid out and expended under the claimed agreement with his wife with reference to her separate estate. In any view of the case, he would have a right to recover under a claim in the nature of a *quantum meruit* what he paid, and that is really the substance of his claim as here presented.

We shall not review *seriatim* all of the alleged errors relating to the statements of defendant's counsel to the jury or in the reception of the evidence. We do not think that the relations between the claimant and his deceased wife, whether pleasant or unpleasant, harmonious or otherwise, are involved in the case. We see no materiality as evidence of the bill of complaint for divorce unless it

might be to fix certain dates. We think the numerous questions raised by appellant upon this branch are not liable to occur upon a new trial, in view of what we have already said.

The judgment of the circuit court is reversed, and a new trial granted.

Moore, C. J., and Steere, McAlvay, Brooke, Blair, and Ostrander, JJ., concurred. Bird, J., did not sit.