## GRAHAM v. GRAHAM.

### No. 1181.

District Court, E. D. Michigan, N. D.

July 15, 1940.

Kelly, Kelly & Kelly, of Detroit, Mich., for plaintiff.

Cook & Cook, of Saginaw, Mich., for defendant.

TUTTLE, District Judge.

This is a suit by a man against his former wife upon the following written agreement alleged to have been executed September 17, 1932, by the parties:

"This agreement made this 17th day of September, 1932, between Margrethe Graham and Sidney Graham, husband and wife. For valuable consideration Margrethe Graham hereby agrees to pay to Sidney Graham the sum of Three Hundred ($300.00) Dollars per month each and every month hereafter until the parties hereto no longer desire this arrangement to continue. Said Three Hundred ($300.00) Dollars per month to be paid to Sidney Graham by said Margrethe Graham directly to said Sidney Graham.

"This agreement is made to adjust financial matters between the parties hereto, so that in the future there will be no further arguments as to what money said Sidney Graham shall receive."

The parties were divorced on July 11, 1933. While the writing itself recites no consideration but merely states that it is made to prevent future arguments as to the amount of money the husband is to receive from his wife, the complaint alleges that the plaintiff had quit his job in a hotel at the solicitation of the defendant who wanted him to accompany her

upon her travels, she paying his expenses, and that he was desirous of returning to work but that the defendant in order to induce him not to do so entered into this agreement. The total amount claimed until November 7, 1939, is $25,500, with interest at five per cent per annum from the time each monthly installment of $300 became due. The defendant in her answer alleges that she has no recollection of entering into the agreement; and she denies that she ever induced plaintiff to give up his hotel work, alleging that on the contrary his abandonment of work and continued reliance upon her for support was always distasteful to her. The answer further alleges that at the time of divorce the parties entered into a written settlement agreement under which defendant (plaintiff in the divorce suit) paid plaintiff (defendant in the divorce suit) $9,000 and each party surrendered any and all claims he or she might have in the property of the other.

Subsequent to filing her answer, the defendant filed a motion to dismiss the complaint on the grounds that her promise was without consideration; that the alleged contract was not within the power of a married woman under Michigan law to make; that, since under its express provisions it was to continue only until the parties no longer desired the arrangement to continue, it was terminated by the divorce and settlement agreement; and that in any event any claim under the alleged contract was destroyed by the provision in the settlement agreement releasing all claims of each party to the property of the other and the provision of the decree of divorce restraining the plaintiff (defendant in the divorce suit) from interfering with, molesting, or communicating with the defendant (plaintiff in the divorce suit) in any manner whatsoever. Briefs have been filed upon the legal issues thus raised, to which I have given careful consideration. While in order to present the complete picture of this lawsuit I have set forth the substance of the answer filed by the defendant, I recognize, of course, that, in passing upon the motion to dismiss, the allegations of the answer cannot be taken into consideration; and in disposing of this motion I therefore assume all of the allegations of the bill of complaint to be true.

The claim is made by defendant that since it is apparent that she no longer desires her obligation to continue, it is destroyed under the express terms of the contract. If the proper construction of the agreement is that she is bound only as long as she wills it, then her promise is obviously illusory and the contract is now and was from the beginning void. However, the provision in question would seem to require action of both parties to terminate it. and if that is so the contract is not illusory. A question might be raised as to whether it was not an implied condition of the contract that the obligations were to be effective only so long as the parties remained man and wife so that it would be automatically terminated by divorce; but the defendant does not so argue, and for reasons hereafter stated I deem it unnecessary to decide this question.

A further question is presented as to whether the complaint sets forth any consideration for the alleged contract. As noted, the written contract itself does not recite any consideration. Plaintiff's counsel argues that consideration for defendant's promise is found in the oral agreement of the plaintiff "to give his wife his constant society, to travel with his wife wherever she wished and as frequently as she wished and not to return to work", all of which he was under no duty to do. However, the complaint does not specifically allege that plaintiff made any promise to do these things, but rather states that the desire of defendant to have him refrain from going back to work was the reason or inducement for her making her promise, which, of course, would not necessarily constitute consideration. However, again, it is unnecessary to decide this question, since I am convinced that even if the consideration is what counsel claims, and the plaintiff did agree to refrain from work and accompany his wife on her travels, the contract was not a competent one for married persons to enter into.

In the first place, it is highly doubtful if the alleged contract is within the capacity of a married woman to make under Michigan law. The degree of emancipation of married women with respect to contract and property rights varies widely in the different states. However, it has been repeatedly stated by the Michigan Supreme Court that under the Michigan statutes a married woman has no general power to contract, but can

contract only in relation to her separate property. See, e. g., Jenne v. Marble, 1877, 37 Mich. 319; Detroit Chamber of Commerce v. Goodman, 1896, 110 Mich. 498, 68 N.W. 295, 35 L.R.A. 96. This is admitted by both parties and has been so frequently repeated by the Supreme Court of Michigan that an extended citation of authorities is unnecessary. The limitation applies to contracts of married women with their husbands as well as with third parties. See Jenne v. Marble, supra; In re Reid's Estate, 1912, 170 Mich. 476, 136 N.W. 476. In general, the Michigan Supreme Court in deciding whether an agreement is within a married woman's contractual capacity looks to the nature of the consideration, requiring it to be for the benefit of her separate estate. (See Goodman case, supra, where the court held that even an incidental benefit to the separate estate of a married woman was insufficient to validate the contract.) Where the contract charges specific property belonging to the married woman, the law is not so rigid in requiring that the consideration be for the benefit of her estate. Thus, although a married woman cannot become personally obligated as surety for her husband, a mortgage on her property for the payment of her husband's debts is enforceable. See Ehle v. Looker, 1914, 182 Mich. 248, 148 N.W. 378; Lewis v. Doyle, 1914, 182 Mich. 141, 148 N.W. 407. There is a line of Michigan cases which go even beyond this point, however, and which hold a married woman bound on her promise to pay where the consideration is for the benefit either of herself or some member of the family. · Campbell v. White, 1871, 22 Mich. 178; Fafeyta v. McGoldrick, 1890, 79 Mich. 360, 44 N.W. 617; Hirschfield v. Waldron, 1890, 83 Mich. 116, 47 N.W. 239; Goodman v. Shipley, 1895, 105 Mich. 439, 63 N.W. 412; Meads v. Martin, 1890, 84 Mich. 306, 47 N.W. 583; In re DeSpelder's Estate, 1914, 181 Mich. 153, 147 N.W. 589. It appears, however, that all of these cases involve contracts to pay for necessaries in the form of goods or services or for domestic services, in which case there may be good reason to make an exception to the general rule, which clearly has not been abrogated. Since the promise of the defendant here consists of a general executory obligation unrelated to specific property and since the consideration is not for the benefit of her separate estate, but if anything to its detriment, it would appear that the contract is beyond the capacity of a married woman under Michigan law to make.

■■■ However, I do not rest my decision on this ground, but rather upon the broader ground that even if the contract is otherwise within the contractual power of the parties it is void because it contravenes public policy. Under the law, marriage is not merely a private contract between the parties, but creates a status in which the state is vitally interested and under which certain rights and duties incident to the relationship come into being, irrespective of the wishes of the parties. As a result of the marriage contract, for example, the husband has a duty to support and to live with his wife and the wife must contribute her services and society to the husband and follow him in his choice of domicile. The law is well settled that a private agreement between persons married or about to be married which attempts to change the essential obligations of the marriage contract as defined by the law is contrary to public policy and unenforceable. While there appears to be no Michigan decision directly in point, the principle is well stated in the Restatement of the Law of Contracts, as follows:

"Sec. 587. Bargain to Change Essential Obligations of Marriage

"A bargain between married persons or persons contemplating marriage to change the essential incidents of marriage is illegal.

"Illustrations:

"1. A and B who are about to marry agree to forego sexual intercourse. The bargain is illegal.

"2. In a state where the husband is entitled to determine the ·residence of a married couple, A and B who are about to marry agree that the wife shall not be required to leave the city where she then lives. The bargain is illegal."

Thus, it has been repeatedly held that a provision releasing the husband from his duty to support his wife in a contract between married persons, or those ·about to be married, except in connection with a pre-existing or contemplated immediate separation, makes the contract void. Garlock v. Garlock, 1939, 279 N.Y. 337, 18 N.E.2d 521, 120 A.L.R. 1331; French v. McAnarney, 1935, 290 Mass. 544, 195 N.E. 714, 98 A.L.R. 530, see other cases at

page 533; Ryan v. Dockery, 1908, 134 Wis. 431, 114 N.W. 820, 15 L.R.A.,N.S., 491, 126 Am.St.Rep. 1025; Williams v. Williams, 1926, 29 Ariz. 538, 243 P. 402. (See other cases at 98 A.L.R. 433). Contra, Atkins' v. Atkins' Adm'r, 1924, 203 Ky. 291, 262 S.W. 268. Similarly, the cases hold that an antenuptial agreement that the parties will not live together after marriage is void. Mirizio v. Mirizio, 1926, 242 N.Y. 74, 150 N.E. 605, 44 A.L.R. 714; Franklin v. Franklin, 1891, 154 Mass. 515, 28 N.E. 681, 13 L.R.A. 843, 26 Am.St.Rep. 266. See also Re Duncan's Estate, 87 Colo. 149, 285 P. 757, 70 .A.L.R. 824; Hills v. State, 61 Neb. 589, 85 N.W. 836, 57 L.R.A. 155; Hanson v. Hanson, 287 Mass. 154, 191 N.E. 673, 93 A.L.R. 701. Even in the states with the most liberal emancipation statutes with respect to married women, the law has not gone to the extent of permitting husbands and wives by agreement to change the essential incidents of the marriage contract.

The contract claimed to have been made by the plaintiff and defendant in the case at bar while married and living together falls within this prohibition. Under its terms, the husband becomes obligated to accompany his wife upon her travels; while under the law of marriage the wife is obliged to follow the husband's choice of domicile. See 30 C.J. 511. Indeed, it is argued by the plaintiff's attorney that this relinquishment by the husband of his rights constitutes consideration for the promise of his wife; but, by the same token it makes the contract violative of public policy. The situation is virtually identical with that set forth in Illustration 2 of Section 587 of the Restatement quoted above. The contract, furthermore, would seem to suffer from a second defect by impliedly releasing the husband from his duty to support his wife, and thereby making it fall directly within the rule of the cases cited supra holding that a contract between married persons living together which contains such a release is void. The present contract does not expressly contain such a release, but if the husband can always call upon his wife for payments of $300 per month he is in practical effect getting rid of his obligation to support his wife. The plaintiff seems to place this construction on the contract since his claim makes no deduction from the promised $300 per month for support of his wife. It is unnecessary to consider in detail the second alleged basis of consideration, namely, the promise of the husband to refrain from working, but it would seem again that a married man should have the right to engage in such work as he sees fit to do, unrestrained by contract with his wife.

The law prohibiting married persons from altering by private agreement the personal relationships and obligations assumed upon marriage is based on sound foundations of public policy. If they were permitted to regulate by private contract where the parties are to live and whether the husband is to work or be supported by his wife, there would seem to be no reason why married persons could not contract as to the allowance the husband or wife may receive, the number of dresses she may have, the places where they will spend their evenings and vacations, and innumerable other aspects of their personal relationships. Such right would open an endless field for controversy and bickering and would destroy the element of flexibility needed in making adjustments to new conditions arising in marital life. There is no reason, of course, why the wife cannot voluntarily pay her husband a monthly sum or the husband by mutual understanding quit his job and travel with his wife. The objection is to putting such conduct into a binding contract, tying the parties' hands in the future and inviting controversy and litigation between them. The time may come when it is desirable and necessary for the husband to cease work entirely, or to change to a different occupation, or move to a different city, or, if adversity overtakes the parties, to share a small income. It would be unfortunate if in making such adjustments the parties should find their hands tied by an agreement between them entered into years before.

It is important to note that the contract here was entered into between parties who were living together at the time and who obviously contemplated a continuance of that relationship. The case is to be distinguished in this respect from those cases which hold that a contract made after separation or in contemplation of an immediate separation which takes place as contemplated is legal, if the contract is a fair one, even though it contains a release of the husband's duty of support. Restatement of Contracts, Sec. 584; Randall v. Randall, 1877, 37 Mich. 563; an-

notation, 50 A.L.R. 351. In Garlock v. Garlock, supra, where the husband entered into a contract to pay his wife $15,000 per year and she in turn released him from any other duty of support, the court in an excellently reasoned opinion held the contract void as against public policy, but recognized that if the agreement had been made after separation or in contemplation of an immediate separation its decision would have been different. Similarly, in Massachusetts, where, as already indicated, a release of the husband's duty of support invalidates an antenuptial contract, the courts have upheld separation agreements containing such a release. Page v. Trufant, 1806, 2 Mass. 159, 3 Am. Dec. 41; Bailey v. Dillon, 1904, 186 Mass. 244, 71 N.E. 538, 66 L.R.A. 427. One reason why the courts uphold such separation contracts is that under the laws of most states married persons can secure a judicial separation with a judicial division of their property and a release of the husband's duty of support; and it is therefore felt that the parties should be permitted to enter into a fair agreement between themselves covering the same things upon which they could obtain relief in court. The problem is entirely different, however, where the parties are living together and contemplate a continuance of that relationship.

The case is also to be distinguished from a group of cases which hold that a married woman can properly contract with her husband to work for him outside the home and be compensated by him for her services (although it appears that this is contrary to the weight of authority). See annotations in 14 A.L.R. 1013 and 23 A.L.R. 18. The ground on which the contract has been upheld in those cases is that it covered services outside the scope of the marriage contract; the promises did not, as here, involve the essential obligations of the marriage contract, and no question of public policy was therefore involved. There is certainly less reason to hold that a married woman cannot lease property owned by her to her husband for a fair consideration than to hold that the parties cannot contract to refrain from intercourse during marriage; in the former case no abridgement of marital rights or obligations is involved. Admittedly, it is difficult to draw the line in cases not so extreme between contracts involving the personal rights or obligations of the marriage contract and those which involve matters outside its scope; but it is unnecessary here to decide exactly where the line is to be drawn, since in my opinion the promises made in the contract in the case at bar clearly attempt to alter essential obligations of the marriage contract.

While, as stated, there are no Michigan cases exactly in point, there is nothing in them inconsistent with a holding that this contract is invalid, but on the contrary they point toward the same conclusion. In Randall v. Randall, supra, the court in upholding a separation agreement said that there is nothing to prevent a husband and wife from entering into a contract so long as there is no overreaching and no violation of public policy. In Jenne v. Marble, 1877, 37 Mich. 319, however, the court held unenforceable a contract under which a man leased to his wife certain farms, including the family homestead, partly on the ground that to recognize that married persons could contract with each other as freely as strangers would be inconsistent with their disabilities of testimony and the desirability of preventing them from placing themselves "habitually in business antagonism." In Artman v. Ferguson, 1888, 73 Mich. 146, 40 N.W. 907, 2 L.R.A. 343, 16 Am.St.Rep. 572, the court held that a husband and wife cannot become partners with each other, largely on the ground that the recognition of the partnership contract would impair the marital relationship by affording opportunity for contentions between them. This case was followed by Root v. Root, 1911, 164 Mich. 638, 130 N.W. 194, 32 L.R.A.,N.S., 837, Ann.Cas.1912B, 740, where a wife was enjoined from competing in business with her husband. Reference may also be made to Michigan Trust Co. v. Chapin, 1895, 106 Mich. 384, 64 N.W. 334, 58 Am.St. Rep. 490, where an agreement of a husband to pay his wife $250 a year for her services as housekeeper was held void for want of consideration, since she was obligated to perform such services under the marriage contract. The case is distinguishable from, but at least not inconsistent with, the present one. Cf. Miller v. Miller, 1889, 78 Iowa 177, 35 N.W. 464, 42 N.W. 641, 16 Am.St.Rep. 431, where, in dealing with a somewhat similar agreement, the court assumed the existence of consideration but held it void as against public policy.

Two decisions of intermediate appellate courts cited by plaintiff in support of his

claim of validity for the contract, Pezzoni v. Pezzoni, 1918, 38 Cal.App. 209, 175 P. 801, and Minor v. Parker, 1901, 65 App. Div. 120, 72 N.Y.S. 549, in my opinion are not in point, the first because the validity of the contract was not passed upon, and the second because a settlement contract after separation was involved.